661 A.2d 171

Charles DEXTER

v.

Sarah L. DEXTER

No. 1764, Sept. Term, 1994.

Court of Special Appeals of Maryland.

July 5, 1995.

John R. Garza (Cheryl E. Rose and Garza, Regan and Rose, P.C., on the brief), Rockville, for appellant.

Scott Robinson (William Connelly and Stern and Connelly, on the brief), Camp Springs, for appellee.

Argued before FISCHER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Appellant, Charles Dexter, appeals from a judgment of the Circuit Court for Montgomery County rendered against him in the amount of $12,386.54 in favor of his former spouse, Sarah L. Dexter, appellee. He poses but one issue, which we reiterate as presented:

> Whether the trial court erred in ordering the Husband to pay the Wife a percentage of his disability pay received from the Veterans Administration[.]

The trial court did not order the husband to pay the wife a percentage of his disability pay. The error that appellant alleges, even if error, was thus not committed. The appeal does, however, present an issue for resolution. We shall explain.

The parties, on the morning of the scheduled divorce hearing, entered into an agreement in respect to child custody, support, and property rights. That agreement was read into the record and ultimately incorporated into the decree of divorce. As relevant to the case *sub judice*, it contained the following provision:

> ORDERED that *pursuant to the agreement of the parties,* forty-seven and a half percent (47.5%) of the [appellant's] military pension is awarded to the [appellee] on a monthly basis "as, if, and when" it is paid by the Department of the Army to the [appellant]. [Emphasis added.]

Thereafter, on the 19th of September 1990, appellant retired from the Army. More important, not only did he retire from the Army, but he was also awarded retirement benefits from the Army and began receiving monthly benefits. Appellee, pursuant to the agreement, and pursuant to the appropriate documentation, also began to receive monthly benefits based upon appellant's retirement and the agreement the two of them had reached. As we have indicated, that agreement had been incorporated into the decree of divorce.

Shortly after appellant was placed on retirement by the Army and awarded retirement benefits, he voluntarily waived his rights to the Army retirement benefits, thus terminating and cutting off all of his Army retirement benefits and appellee's as well. He waived, *i.e.* terminated, his Army retirement benefits in order to qualify for greater benefits, based upon disability, through the Veterans Administration (VA). The statute providing for VA disability benefits prohibits any division of those benefits to benefit a former spouse. Thus, neither the VA nor appellant made any payments to appellee. The Army (Department of Defense) ceased payment of retirement benefits because appellant had waived his right to such benefits.

Appellee then sought relief in the trial court. She requested that the trial court reduce its prior award, based upon appellant's retirement pension, to judgment. She requested that the court order appellant to pay to her sums in the future at the rate of 47.5% of the sums received from the VA as a result of appellant's waiver of his retirement benefits, and for other relief not pertinent here.

After several continuances had been granted at the request of both parties, Judge Cave, the Acting Administrative Judge of Montgomery County, correctly recognized that the matter was inappropriately set in on a motion docket when, in fact, the case was "a complaint and answer and therefore should be set for trial on the non-jury calendar."

Thereafter, the case came on for trial before the Honorable D. Warren Donohue. At the trial, both appellant's and appel-

lee's counsel agreed in opening statement (that was later supported by the testimony) that they and their clients had entered into the agreement, thereafter incorporated into the divorce decree, that appellee was to receive 47.5% of appellant's Army retirement pension. We note that even appellant's opening statement provided, in part:

[W]e believe that the Doctrine of Res Judicata precludes the defendant here from attacking the judgment which was obtained by consent.[1]

The parties intended this judgment to settle all matters relating to their marriage. Both parties were represented by counsel during the settlement of this divorce case and both were asked by the court if this agreement was what they intended.

Later, the trial court noted:

[T]hey [appellee] are not asking for an order requiring whoever pays this money to pay a certain percent; they are asking him to make the difference in what she would have [received] if he had [stayed] retired from the Army.

Still during the opening statement phase of the trial, the court noted:

I am not even talking about part of his disability award; I am talking about him simply paying her money that would be the equivalent of what she would have received had he elected, which he could have done, to receive his Army retirement [as the evidence later indicated, he initially elected retirement then waived it].

I am not talking about the disability award ... but what about the alternative, which is that he just simply promises to pay whatever that amount is?

Appellant, during direct examination by appellee's counsel, when asked about the agreement, responded:

Q  ... You intended your wife to get the 47.5 percent of whatever you got as a result of your service in the military?

---

1.  Appellant was at this point defending against appellee's fraud claims; the trial court found no fraud.

A  After the divorce proceedings, I informed my wife how to apply for her 47.5 percent. . . .

Q  . . . [I]t was part of the agreement that she was going to get 47.5 percent of whatever you got as a result of serving in the military, right?

A  She got 47.5 percent of my retirement pay because she was married to me during the time I was in the service for 19½ years.

. . . .

Q  . . . And that was the agreement?

A  That was the agreement.

Q  That was what was in your mind when you negotiated the agreement through your attorney on February 1st, that she would get that money?

A  Yes.

Later, appellant was asked:

Q  Okay.  You have received all your checks from VA? [2]

A  Correct.

Q  Have you made out any checks since March of '91 to Mrs. Dexter to recompense her for the amount of money that she lost as a result of your waiving the pension?

A  No, I have not.

After all the evidence was admitted, appellee, during the closing argument stage, argued for judgment on a breach of contract theory, in that appellant had "thwarted" the provisions of the contract and that appellee was seeking only "a money judgment."  The court said, "Basically, you are seeking to enforce the agreement."  After responding affirmatively, appellee then noted:

And that if the Court feels it has the authority to grant an order directing the additional monies be paid each month

---

**2.**  The sums received by appellant from the VA are considerably more than he received from his pension.  The VA sum of $1,214 is tax free. His military retirement pension would have been taxable.  Additionally, he went back to work as a civilian employee of the Department of the Army as a GS–12.

... there comes a point in time that after you get that money ... it becomes property that you can pay out.

. . . .

If the Court does not feel it has that authority to award that, then I think that I am in the position of perhaps coming back every three years. . . .

In rendering its oral opinion, the trial court, after discussing and dismissing the fraud claims, stated:

What I do see, though, is parties ... entering into an agreement in which both of them contemplated ... the husband would retire ... and the wife would receive 47.5 percent of his retirement pay ... and that is what they bargained for, and that is what they intended ... I find as a matter of fact that that is what the parties intended.

... I think implicit in an agreement is that both parties will take any and all reasonable steps to carry out the intentions of the parties as expressed by this agreement.

. . . .

Applying that rationale to the case at hand ... that although I acknowledge the ... husband's right to pursue [VA] benefits. . . .

... I am sure that it isn't fair. . . . It has the clear effect of depriving the ... wife of a substantial portion of the benefits of this agreement. . . .

... [I]f a reasonable interpretation can be given ... then that interpretation should be given ... although the husband had an absolute right to pursue benefits with the Veterans' Administration, he couldn't do that and at the same time deprive the wife of the benefits that she bargained for under the agreement.[3]

So what I find is that ... the implicit terms of the agreement would require the husband to make the wife

---

3. As we have indicated elsewhere, this is not a case of retirement benefits never vesting. They had vested. He had retired. They were both receiving benefits under the agreement when he unilaterally wiped out the benefits by waiving them.

whole, and by doing that he would have to pay her the amount that they bargained for in order to *not be in breach of the agreement,* and he hasn't done that, and so I find that he has breached the agreement. . . .

So what I think the plaintiff is entitled to is *not an order for the future,* but simply an order for the past because I am not going to assume that he is going to continue to breach the agreement.

. . . .

I do not feel that that steps on the toes of the Federal Government and their preemptive rights. I feel that this is a permissible if not indeed a required act on the part of the State to interpret and enforce agreements that are submitted to the court by consent and approved by the court. [Emphasis added.]

In his written order, Judge Donohue did *not* order appellant to pay the wife a percentage of his disability pay received from the VA. The trial court found, in contract, and applying contract principles that, under the agreement, each party had an obligation to take reasonable steps to bring the agreement to "fruition." We agree. The trial court then rendered judgment for past sums that would have been received had appellant not unilaterally violated the terms of the agreement by waiving and rejecting the retirement benefits after they had accrued and vested and were being received by both parties.

■ Appellant appears to believe that his failure to be in a position to cause appellee's benefits to accrue is as a result of federal statutory law. He is mistaken. The inability of appellee to receive the benefits she bargained for is caused not by any federal statute or case law, but by appellant's rejection, by waiver, of the retirement benefits that he had agreed were to be partially hers. The Court of Appeals stated in *Alois v. Waldman,* 219 Md. 369, 375, 149 A.2d 406 (1959):

It is well settled that, where cooperation is necessary to the performance of a condition [in a contract], a duty to cooperate will be implied, and that a party owing such a duty

cannot prevail if such failure operates to hinder or prevent performance of the condition.

*See also P.V. Properties, Inc. v. Rock Creek Village Assocs. Ltd. Partnership*, 77 Md.App. 77, 86–87, 549 A.2d 403 (1988) ("[T]he law will imply an obligation to act in good faith and to deal fairly with the other party ... and an obligation to cooperate when necessary to the performance of a condition." (citations omitted)); also cited in *S.L. Hammerman Org., Inc. v. Community Health Facilities Inc.*, 264 Md. 37, 45, 284 A.2d 599 (1971). In *Seldeen v. Canby*, 259 Md. 526, 532, 270 A.2d 485 (1970), the Court of Appeals opined, citing *Alois:*

> In *Wissahickon Realty Corp. v. Boyle*, 385 Pa. 198, 122 A.2d 720 (1956) ... [t]he court held the lessee bound by the lease, since she "could not *by her own act* make the fulfillment of that condition impossible and thereby relieve herself from her obligation under the agreement." Our prior decisions are in accord. [Emphasis added.]

*See also Funger v. Mayor of the Town of Somerset*, 249 Md. 311, 330–31, 239 A.2d 748 (1968), where the Court quoting from *Restatement, Contracts* § 315 (1932), held:

> "Prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party, or the discharge of a duty by him, is a breach of contract...."

The Court then, quoting from *Black v. Woodrow*, 39 Md. 194, 215 (1874), in part, stated:

> [A]nd the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, *such* corresponding and correlative obligation will be implied.

*Id.* at 331, 239 A.2d 748 (emphasis added). After noting that a corresponding or correlative obligation to cooperate, or, at the very least, not to hinder, can be implied, the Court stated: "Somerset obligated itself not to frustrate Community in the exercise of the rights which it acquired.... Somerset's failure ... constituted a substantial breach of contract...." *Id.*

at 332, 239 A.2d 748. *See also Whitney v. Halibut, Inc.,* 235 Md. 517, 530, 202 A.2d 629 (1964) ("[T]he party owing such duty cannot prevail if his failure to cooperate hinders or prevents performance thereof.")

■ We hold that under Maryland contract law where, as in the case *sub judice,* the parties enter into an agreement that one spouse will receive a percentage of pension benefits, on a periodic basis, when they become payable, and when, as here, they are already payable and being paid, the pensioned party may not hinder the ability of the party's spouse to receive the payments she has bargained for, by voluntarily rejecting, waiving, or terminating the pension benefits. We hold that the voluntary waiver of appellant's Army retirement pension was under Maryland law a breach of contract, for which the measure of past damages is the amount the receiving spouse would have received had appellant not committed the breach. As the trial judge did not award appellee any future portions of appellant's VA pension, we do not further address the alleged federal peremption in this area of interspousal conflict.[4]

Judge Donohue correctly perceived the scope of the proper issue, limited it, and correctly resolved it. He did not err.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**

---

4. As our opinion is based on Maryland contract law and the trial court's findings do not appear to hinder appellant's receipt of VA disability benefits, we perceive the issues here to be factually and legally inapposite to the facts and issues in *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (and like cases) relied upon by appellant. The trial court, in the case *sub judice,* enforced a contract. It did not engage in "distributing any military benefits," *i.e.,* disability benefits.