### In re Charles DEXTER, Debtor.

**Charles Dexter, Plaintiff/Counter Defendant,**

**v.**

**Sarah Dexter, Defendant/Counter Plaintiff.**

**Bankruptcy No. 99–1–8453PM.**
**Adversary No. 99–1–AP457PM.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

June 23, 2000.

Leslie S. Auerbach, Camp Springs, MD, for debtor.

Jeffrey M. Orenstein, Rockville, MD, for defendant.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

The debtor, Charles Dexter (sometimes "plaintiff" or "Charles"), filed this complaint seeking an order of the court ruling that, by virtue of his Chapter 7 discharge issued October 25, 1999, he is no longer indebted to his former spouse, Sarah Dexter (sometimes "defendant" or "Sarah"), on account of a judgment in the sum of $17,486.88 entered in the Circuit Court for Montgomery County, Maryland, in the case of *Charles Dexter, Plaintiff vs. Sarah L. Dexter, Defendant,* Case No. 36576, on July 27, 1998. He also seeks a ruling that he has no further obligation to continue payments to the defendant of $364.31 pursuant to an agreement between the parties and subsequent court order.

The parties to this case were also the parties in the case of *Charles Dexter v. Sarah L. Dexter,* 105 Md.App. 678, 661 A.2d 171, *cert. denied* 341 Md. 27, 668 A.2d 36 (1995), wherein that court affirmed the judgment of the Circuit Court for Montgomery County that the debtor had breached the agreement of the parties and was obligated to pay Sarah the amount they had bargained for.

The facts are not disputed. The trial consisted of the reception of various exhibits into evidence followed by arguments in support of the respective positions of the parties.

The defendant submits her claims are not excepted from discharge under 11 U.S.C. § 523(a)(15) that provides:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, or child of the debtor.

This exception from the discharge of debtors was enacted as a part of the Bankruptcy Reform Act of 1994 and came about as the result of the recognition by Congress of the unfairness of restricting the exception to discharge to claims of a former spouse for alimony, maintenance or support. The legislative history consists of the Floor Statement of Chairman Brooks of the House Judiciary Committee:

Subsection (e) adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obli-

gations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

140 Cong.Rec. H10751, H10770 (daily ed. Oct. 4, 1994) as reprinted in *Collier on Bankruptcy,* Vol. D, App.Pt. 9–95 (15th Edition Revised 2000). This legislation was enacted in response to widespread calls for reform of the 1978 Act with its dichotomy of family law obligations—nondischargeable support and dischargeable property distributions. *See generally, Collins v. Hesson,* 190 B.R. 229, 234–236 (Bankr.D.Md.1995). One scholar, responding to widespread criticism of the former law, pointed out:

> Because of the rise of equitable distribution as the dominant method of allocating marital gains and losses, the policy of refusing to protect divorce-related property divisions is unfair to divorcing couples who structure their financial arrangements according to modern notions of marital partnerships.... Moreover, Congress' directive that divorce obligations be characterized according to federal law, rather than state law, has resulted in increasing federal interference with state domestic relations schemes. These judicial failures are understandable: they reflect the fact that meaningful distinctions no longer exist between support awards and property divisions.

J.B. Singer, *Divorce Obligations in Bankruptcy Discharge: Rethinking the Support/Property Distinction,* 30 Harv.J. on Legis. 43, 113–14 (1993).

■ The exception of subsection (A) is not applicable here because the debtor concedes that he has the ability to pay the debt from funds not reasonably necessary to be expended for maintenance or his support. This leaves the issue whether the benefit to the debtor of nonpayment outweighs the detrimental consequences to his former spouse. *See* 11 U.S.C. § 523(a)(15)(B). Which party has the burden of proof? This court held in *Hesson, supra* at 238–239, that the receiving spouse had the burden to show that the detrimental consequences of discharging the debt outweigh the benefit to the debtor. However, since that decision, most courts reached the opposite conclusion, placing the burden upon the debtor. After prolonged reflection, the court believes that the latter is the better rule and would be the rule that the United States Court of Appeals for the Fourth Circuit would follow were this issue presented to it. *See In re Crosswhite,* 148 F.3d 879, 884–885 (C.A.7 1998); *Gamble v. Gamble (In re Gamble),* 143 F.3d 223, 226 (C.A.5 1998) (upholding bankruptcy court's assignment of "the initial burden of showing that § 523(a)(15) was applicable to the debt in question" to the plaintiff and then assigning "the burden of proving that one of the exceptions applied to take it out" to the debtor); *In re Jodoin,* 209 B.R. 132, 140 (9th Cir. BAP 1997) ("once the Plaintiff demonstrates that the [d]ebtor incurred

the debt in connection with divorce, the burden shifts to the [d]ebtor to prove subparts (A) and (B)"); *In re Moeder*, 220 B.R. 52, 55–56 (8th Cir. BAP 1998) ("the burden of proof lies with the debtor to show that an exception to nondischargeability under § 523(a)(15)(A) or (B) applies in a given case"); *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (6th Cir. BAP 1998).

### FACTS OF THE CASE

After nearly 19 years of marriage, the parties ended up in divorce proceedings. They came before the Circuit Court on February 1, 1990, and informed the court that they had agreed to various issues, including custody, support, a monetary award, and the division of Charles Dexter's military pension. Sarah was awarded a monetary award and 47.5% of the debtor's military pension on a monthly basis "as, if, and when" it is paid by the Department of the Army to Charles. The Judgment Granting Absolute Divorce and Related Relief was entered February 20, 1990. Less than 90 days afterward, Charles filed bankruptcy case No. 90–4–1654 under Chapter 7 in this court and received a discharge on January 8, 1991. Charles sought to nullify the military pension award and monetary award set out in the consent agreement embodied in the Court Decree entered earlier in the year. Sarah filed an adversary proceeding seeking a ruling of this court for determination of dischargeability of certain debts. This court passed a judgment on April 11, 1991, holding that the monetary award to Sarah was discharged, but that the effect of the agreement and the Circuit Court order had been to transfer 47.5% of Charles' military pension to Sarah and that the parties did not stand in a debtor and creditor relationship as to that item.

After the filing of the bankruptcy case, Charles obtained the conversion of his military pension to a disability benefit. This benefitted him in two respects. First, it substantially increased the amount of the benefit, and second, it converted the retirement payment from taxable income to largely non-taxable income. Charles thereupon ceased making any payments to Sarah, arguing that because there was no longer any military pension paid to him, he had no further obligation to continue payments to Sarah on account of it. Sarah moved to enforce the obligation, and the matter came before the Honorable D. Warren Donahue, Judge of the Circuit Court for Montgomery County, Maryland, on December 22, 1993. He entered a judgment in favor of Sarah against Charles finding that, while there had not been any fraud on Charles' part, he had breached the agreement of the parties by not paying over to Sarah what was due under the agreement. The court pointed out that she was entitled to 47.5% of his military retirement pay but that Charles had waived his right to receive that pay. The Circuit Court entered judgment against Charles in the amount of $12,386.54 for payments due from March, 1991, through December, 1993, and held that he had a continuing responsibility to Sarah for a sum equivalent to 47.5% of his retirement pay.

The Court of Special Appeals affirmed, *Dexter v. Dexter*, 105 Md.App. 678, 661 A.2d 171 (1995), holding that "where cooperation is necessary to the performance of a condition [in a contract], a duty to cooperate will be implied and that a party owing such a duty cannot prevail if such failure operates to hinder or prevent performance of the conditions." Undaunted, Charles filed his second bankruptcy case under Chapter 7 on July 15, 1999.

Charles had remarried in 1990 and separated in 1996 or 1997. The record reflects that he was separated at the time of the filing of this case and that he and his second wife ("Peggy") had purchased a house in Beltsville, Maryland, that was later sold for $168,000. His second wife received the proceeds of the sale. Charles also spent $14,000 to pay off all of the bills where he and Peggy were jointly liable.

The debts sought to be discharged under the current bankruptcy filing are some $22,000 said to be owed to Sarah; $7,900 owed to Charles' attorneys, who had represented him before the Court of Special Appeals; and slightly over $1,000 in credit card and other consumer debt. The current Chapter 7 case was filed to enable Charles to free himself of the obligation to Sarah, notwithstanding the fact that since the Agreement between the parties, Charles' retirement-disability pay increased substantially, and Sarah's share was frozen and not subject to periodic increases based upon increases in the payments to Charles.

As to the parties' current situation, Charles is employed as a computer specialist at the Department of Defense. Sarah is also employed by the federal government. Charles is entitled to free medical care and is building a retirement portfolio far in excess of Sarah's. At the time of the filing of the case, Charles owned a 1998 Chevrolet Blazer with payments said to be $553.00 a month and automobile insurance costing over $2,500.00 a year. At trial, it was pointed out that he now drives a Nissan Pathfinder with payments of $555.00 a month. The record does not reflect when that vehicle will be paid off. In addition, it is unlikely that the debtor will continue to file a tax return as a married person filing a separate return, a category that calls for a higher tax rate than he would pay after his divorce from Peggy.

█ Looking at this case in the totality of the circumstances presented, the issue is whether Charles may succeed in his effort to use the bankruptcy process a second time to facilitate his third attempt to undo the 1990 Agreement. Charles is living comfortably, and Sarah appears to be living close to the edge. She does not have the safety net that Charles has with respect to medical expenses. It is a certainty that Sarah will have to replace her 1986 model automobile and incur substantial monthly payments. Charles bought another automobile since the filing of the current bankruptcy case.

Based upon the record, the court cannot find that discharging the debt to Sarah benefits Charles to the extent that it outweighs the detrimental consequences to Sarah.

An order will be entered in accordance with the foregoing.