65 A.3d 214

**Robert B. DAPP**

v.

**Linda C. DAPP.**

**No. 0500, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

May 1, 2013.

324

Andrew M. Hermann, (Levy, Mann, Caplan, Hermann & Polashuk, LLP, on the brief), Owings Mills, MD, for Appellant.

Colleen A. Cavanaugh, (Cavanaugh & Warshaw, PA, on the brief), Towson, MD, for Appellee.

Panel: ZARNOCH, KEHOE, W. MICHEL PIERSON, (Specially Assigned).

PIERSON, J.

Appellant, Robert B. Dapp, appeals an order of the Circuit Court for Baltimore County requiring him to pay appellee, Linda C. Dapp, certain amounts based upon his past and future receipt of retirement benefits under the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et seq.*, in accordance with the terms of the parties' Marital Separation and Property Settlement Agreement. He asserts that the division of so-called Tier I benefits pursuant to a marital settlement agreement is prohibited by the Railroad Retirement Act, and that, therefore, the Supremacy Clause of the United States Constitution precludes the circuit court from enforcing that portion of the Agreement. We agree, and reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. and Mrs. Dapp were married on September 7, 1968. Mr. Dapp became employed by Amtrak[1] on January 1, 1981. The parties separated on February 26, 1986. On April 4, 1988, Mrs. Dapp was granted a judgment of absolute divorce by the Circuit Court for Baltimore County. The judgment incorporated the parties' Marital Separation and Property Settlement Agreement dated December 2, 1987. Paragraph 8 of the Agreement contained a mutual waiver of alimony and other spousal support. Paragraph 12 stipulated that "[t]he Wife shall be entitled to one-half (½) of all pension accrued by the Husband with Amtrak if she does not remarry within five (5) years from the date of final divorce."

Mrs. Dapp has remained unmarried since the divorce. Mr. Dapp, who had worked for Amtrak for 88 months before the divorce, continued to work there for another 243 months after

---

1. Amtrak, a private for-profit corporation created by federal statute, is a railroad carrier (49 U.S.C. § 24301(a)), and hence an employer within the Railroad Retirement Act. 45 U.S.C. § 231(a)(1)(I).

the divorce, until he retired in February 2009. Upon his retirement, Mr. Dapp began to receive monthly retirement benefits totaling $3,113.13 pursuant to the Railroad Retirement Act of 1974. Of this amount, $1,950.00 constitutes so-called Tier I benefits, and $1,163.13 constitutes so-called Tier II benefits and supplemental annuity payments.[2] Mr. Dapp did not inform Mrs. Dapp of his retirement at the time, and she received no portion of the retirement benefits.

On February 3, 2010, after learning of Mr. Dapp's retirement, Mrs. Dapp filed a complaint to enforce the Agreement in the Circuit Court for Baltimore County, seeking one-half of the entirety of Mr. Dapp's railroad retirement benefits under the authority of Paragraph 12. Mr. Dapp responded that Mrs. Dapp was entitled only to one-half of the "marital portion" of his Tier II benefits and supplemental annuity payments, and that she was not entitled to any portion of his Tier I benefits. The parties filed cross motions for summary judgment, which were denied in a written opinion. The court found that the language of Paragraph 12 of the Agreement was susceptible of more than one meaning. It reasoned that the word "accrued" was ambiguous because of the absence of any language relating to the timing of the accrual. It determined that a hearing should be held to take evidence on the meaning of the Agreement. As the opinion framed the issues to be resolved, they included (1) whether Paragraph 12 included only that portion of the retirement benefits attributable to Mr. Dapp's employment during the parties' marriage, or all

---

2. The Railroad Retirement Act replaces the Social Security Act for rail industry employees and provides monthly annuities for employees upon retirement or disability. Benefits available to retired railroad workers under the Act include multiple components. The Tier I component is a substitute for Social Security benefits, and "corresponds exactly to those an employee would expect to receive were he covered by the Social Security Act." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), citing 45 U.S.C. § 231b(a)(1). The Tier II component is similar to a private pension plan in that it is tied to a worker's earnings and career service. *See* 45 U.S.C. § 231b(b). An employee who completes 25 years of railroad service and who had service before October 1981 may also receive a supplemental annuity. 45 U.S.C. § 231a(b).

retirement benefits that accrued during Mr. Dapp's employment with Amtrak, and (2) whether Paragraph 12 encompassed Tier I benefits as well as other benefits.

At the hearing, testimony was received from the drafter of the agreement, and from Mrs. Dapp and Mr. Dapp. Upon its conclusion, the court rendered an oral opinion. It found that the bargain made by Mr. and Mrs. Dapp was that the entirety of Mr. Dapp's retirement benefits, not simply those benefits resulting from employment during marriage, would be divided with Mrs. Dapp. It also found that the parties made no distinction between Tier I and Tier II benefits. In consequence, the meaning of the agreement was that Mrs. Dapp would receive one-half of all retirement benefits to which Mr. Dapp was entitled when he retired, including the Tier I benefits.

Based on these findings, the judge concluded that Mrs. Dapp was entitled to a qualified domestic relations order (QDRO) that divided Tier II benefits payable after the trial, as well as an award of one-half of the previously paid Tier II benefits, reduced by one half of the taxes that had been paid by Mr. Dapp based on their receipt. Recognizing that federal law precluded the court from directly dividing the Tier I benefits, the judge stated that he could "enforce in equity the parties' agreement to divide those benefits." He determined to require that Mr. Dapp pay Mrs. Dapp one-half of the Tier I benefits received by him in the future, with a deduction for taxes paid by Mr. Dapp, and to award Mrs. Dapp an amount equal to one-half of the Tier I benefits previously paid, reduced by one-half of the taxes that had been paid by Mr. Dapp as a result of his receipt of those benefits.

The court's final order of April 28, 2011, therefore, had four components. The first was a judgment for $12,642.83, representing one-half of the Tier II benefits already received by Mr. Dapp between March 2009 and March 2011, less half of the taxes paid by him on those benefits. The second was a direction for the entry of a QDRO for Mr. Dapp's future Tier II benefits. The third was a judgment for $21,197.07, representing one-half of the Tier I benefits received between March

2009 and March 2011, less half of Mr. Dapp's tax burden. Finally, the court ordered Mr. Dapp to pay to Mrs. Dapp on the fifteenth of every month, beginning April 15, 2011, a sum equal to one-half of all Tier I benefits received by him, less half of his tax burden on those benefits. The court stayed the orders regarding the Tier I benefit liability pending appeal.

Mr. Dapp timely appealed those portions of the circuit court's order requiring payments to Mrs. Dapp based upon his Tier I benefits. He does not question the court's orders regarding his Tier II benefits; Mrs. Dapp currently receives $581.57 monthly pursuant to the QDRO dividing Mr. Dapp's Tier II benefits, and Mr. Dapp has satisfied the $12,642.83 judgment for past Tier II benefits.

## DISCUSSION

Mr. Dapp argues that the circuit court erred as a matter of law by ordering him to pay Mrs. Dapp a portion of his Tier I retirement benefits because it was precluded from doing so by federal law. He does not question the circuit court's finding that the parties' agreement encompassed the Tier I benefits, but asserts that the court could not enforce this agreement because it contravenes the provisions of the Railroad Retirement Act. Neither party disagrees with the proposition that the court could not directly order the payment of Tier I benefits to Mrs. Dapp, through a QDRO or otherwise. Mrs. Dapp asserts that nonetheless the court had the power to enforce Paragraph 12 of the parties' Agreement, which stipulated that Mrs. Dapp would receive one-half of the benefits that Mr. Dapp would receive in the future, through an order requiring Mr. Dapp to make payments from his "general assets" that correspond to the Tier I benefits that he receives.

The basis of Mr. Dapp's argument is section 14(a) of the Railroad Retirement Act of 1974, which contains a broad provision against assignment of benefits. It states, in pertinent part:

Except as provided in subsection (b) of this section ... notwithstanding any other law of the United States, or of

any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated[.]

45 U.S.C. § 231m(a).

The United States Supreme Court applied a prior version of this statute [3] in *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 574, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). There, the Court reversed a California Supreme Court decision that provided a remedy to a wife upon dissolution of marriage based on her husband's expectation of receiving railroad retirement benefits. The California court decided that the benefits were subject to the state's community property regime, and held that because the benefits flowed in part from the husband's employment during the parties' marriage they were community property. The Supreme Court held that the Supremacy Clause of the United States Constitution required reversal because the award conflicted with the Railroad Retirement Act. It reasoned that the right granted to the wife by state law conflicted with the express terms of federal law, and that the consequences of this grant injured the objectives of the federal program sufficiently to require nonrecognition of the right. The Court held that the critical terms of the federal scheme to which the Supremacy Clause required California to defer "include a specified beneficiary protected by a flat prohibition against attachment and anticipation." *Hisquierdo*, 439 U.S. at 582, 99 S.Ct. 802. It rejected the argument that the right would not conflict with the statute because it could be effectuated by a remedy under which the husband would be required to pay a portion of his benefit or its monetary equivalent as he received it, stating that the anti-assignment provision "protects Congress's decision about how to allocate the benefits provided by the Act, and any automatic diminution of that amount frustrates the

---

**3.** As discussed below, section 231m was amended in 1983 to except Tier II benefits from its terms. The pertinent statutory language quoted above is unchanged from that before the Court in *Hisquierdo*.

congressional objective." *Hisquierdo,* 439 U.S. at 583, 99 S.Ct. 802. The Court also rejected the contention that the wife's interest could be vindicated by an offsetting award of currently available community property, reasoning that an offsetting award "would upset the statutory balance and impair [the husband's] economic security just as surely as would a regular deduction from his benefit check." *Hisquierdo,* 439 U.S. at 588, 99 S.Ct. 802.

Congress responded to *Hisquierdo* in 1983 by amending the Act to allow certain benefits, including those in Tier II, to be divisible. See 45 U.S.C. § 231m(b)(2). Tier I benefits, however, remain subject to the Act's broad prohibition against division or assignment. The only exception is in cases of delinquent alimony and/or child support. *See Hisquierdo,* 439 U.S. at 576, 99 S.Ct. 802; citing 42 U.S.C. § 659.[4] It is undisputed that Mr. and Mrs. Dapp waived all rights to alimony and other spousal support in Paragraph 8 of the Agreement. Accordingly, that exception does not apply here.

From *Hisquierdo,* it is clear that Tier I benefits are not subject to division by a court under the authority of state community property laws or other laws relating to division of marital assets. Mrs. Dapp seeks to distinguish this case because it involves the court's enforcement of an agreement, not a court order directly dividing the benefits. She reasons that the trial court's action requires Mr. Dapp to make payments from his general assets, and therefore does not operate directly on the benefits in violation of section 231m(a).

It is true that this case involves a private agreement between the parties to divide benefits, whereas *Hisquierdo* involved a court-ordered division of benefits under a provision of state law. But this is a distinction that makes no difference

---

4. In this exception, Congress limited "alimony" to its traditional common-law meaning of spousal support, and specifically stated that alimony does not include "any payment or transfer of property or its value by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii).

under the terms of the statute. We conclude that the agreement made by Mr. Dapp was void when it was made because the unambiguous terms of section 231m(a) prohibit "assignment" of the benefits. That is exactly what Mr. Dapp attempted to do when he made an agreement that Mrs. Dapp would receive a portion of those benefits; an agreement to divide the benefits, i.e., to transfer a portion of the benefits, is plainly an assignment of those benefits. Because Mr. Dapp could not legally make such an agreement, his promise was simply ineffective. Therefore, the agreement is not subject to enforcement in any manner, whether by an order directly affecting the benefits or otherwise. Just as the Supremacy Clause of Article VI of the U.S. Constitution—which states that the laws of the United States are the supreme law of the land—precluded the California court in *Hisquierdo* from dividing Tier I benefits under state community property laws, so too does it preclude courts of this state from enforcing a private agreement that purports to divide those benefits.

While there appears to be no reported precedent that decides this precise issue, our conclusion is supported by the case law treating the nearly identical issue of the assignability of retirement benefits under the Social Security Act in the context of marital property settlement agreements. As we discussed above, Tier I benefits are a substitute for and commensurate with social security benefits. The Social Security Act contains a provision shielding those benefits from attachment, assignment, and other division, in language not unlike that of section 231m(a). The Social Security Act provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process or the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).

It is well settled that the effect of this provision is to preclude states "from intervening in the allocation of social

security benefits. Consequently, social security benefits may not be considered marital property or be subject to distribution in any manner in a divorce proceeding." *Pleasant v. Pleasant*, 97 Md.App. 711, 719, 632 A.2d 202 (1993). In that regard, the operation of the Social Security Act provision is precisely the same as that of the Railroad Retirement Act. In addition, courts of other states have held that section 407 bars enforcement of provisions in marital property settlement agreements that purport to divide future social security benefits between spouses. *See, e.g., In re Marriage of Anderson,* 252 P.3d 490, 494 (Colo.App.2010) ("the transfer of future and as yet unpaid Social Security benefits from husband to wife ... constituted a transfer of husband's rights to future benefits in violation of 42 U.S.C. § 407(a), and the district court lacked jurisdiction to enforce it.")(italics omitted); *Simmons v. Simmons,* 370 S.C. 109, 634 S.E.2d 1, 4 (2006) ("state courts are without power to take any action to enforce a private agreement dividing future payments of Social Security when such an agreement violates the statutory prohibition against transfer or assignment of future benefits."); *In re Marriage of Hulstrom,* 342 Ill.App.3d 262, 276 Ill.Dec. 730, 794 N.E.2d 980 (2003).

State courts cannot enforce such agreements precisely because such agreements are not valid in the first place. In *Gentry v. Gentry,* 327 Ark. 266, 938 S.W.2d 231 (1997), the Supreme Court of Arkansas concluded that while social security benefits, once received, "become the recipient's personal property, and he can do whatever he wishes with them," the transfer or assignment of future benefits is invalid and unenforceable. 938 S.W.2d at 233; citing *United States v. Eggen,* 984 F.2d 848, 850 (7th Cir.1993). Similarly, the Supreme Court of Nevada, in *Boulter v. Boulter,* 113 Nev. 74, 930 P.2d 112 (1997), held that "[a]lthough social security recipients may use the proceeds of their social security, after their receipt, to satisfy preexisting obligations, they may not contract to transfer their unpaid social security benefits." 930 P.2d at 114. The reasoning of these courts supports our conclusion that the Railroad Retirement Act's anti-assignment provision, like that

of the Social Security Act, prohibits the assignment of future Tier I benefits in a marital settlement agreement or other contract, and therefore precludes courts from enforcing such contracts.

Mrs. Dapp claims that although she is barred from receiving a portion of those benefits directly, she can nevertheless receive the equivalent out of Mr. Dapp's general assets. She notes that there is no provision of law that precludes Mr. Dapp from distributing to a former spouse a portion of his Tier I benefits after he has received them. She contends that the court has the power to prevent him from avoiding the consequences of an agreement that he made voluntarily (and for valid consideration) by an order that applies not to the benefits themselves but to his general assets.

In support of this argument, Mrs. Dapp cites *Allen v. Allen*, 178 Md.App. 145, 941 A.2d 510 (2008), and *Dexter v. Dexter*, 105 Md.App. 678, 661 A.2d 171 (1995). In each of those cases, this Court upheld an order that required a former spouse to make payments from general assets based on his receipt of benefits that were not divisible by court order. In both cases, the spouses, upon divorce, agreed to split the husband's future military retirement benefits which, at the time of the agreement, were divisible. However, upon retirement, each of the husbands ended up receiving disability retirement benefits that were not divisible, thereby frustrating the terms of the agreement. In each case, this Court sustained an order that required the husband to pay sums from general assets based on receipt of the disability benefits, in order to prevent the frustration of the original agreement. We concluded in both cases that the order did not contravene federal law because the order did not directly award to the wife a portion of the benefits that were not subject to division.

Those cases do not provide authority to sustain the trial court's action here. Unlike the agreement that is the subject of this case, the agreements enforced in *Allen* and *Dexter* were valid when they were made; the anticipated military retirement benefits were divisible and assignable at the time

of contract. The Tier I benefits at issue here, however, were not. Because Mr. Dapp was barred by the anti-assignment clause from anticipating or assigning his future Tier I benefits, he has no pre-existing obligation to make payments based upon the amount he now receives, and there is no valid agreement for the circuit court to enforce. The fact that the order does not directly affect his benefits is irrelevant.

Mrs. Dapp also cites several federal cases involving social security benefits in which courts have approved remedies similar to that fashioned by the circuit court in this case, i.e., requiring a social security recipient to pay from general assets amounts equal to benefits received. *See Fortelney v. Liberty Life Assurance Co.,* 790 F.Supp.2d 1322, 1344–45 (W.D.Okla. 2011), and cases cited therein; *Poisson v. Allstate Life Ins. Co.,* 640 F.Supp. 147 (D.Me.1986). In those cases, courts did hold that an order requiring payment of amounts from general assets based on receipt of non-assignable benefits did not violate the anti-assignment provision of the Social Security Act. But none of those cases involved an underlying agreement that directly contravened the statute. For example, *Fortelney* and *Poisson* each involved long term disability policies with a social security offset, and the issue was whether the insurers could recover an overpayment based on the policyholders' receipt of lump sum social security benefits. In each case, the court held that the underlying agreement was valid, en route to a holding that the recovery of the overpayment from the policyholders' assets did not directly affect the benefits in violation of the statute. Therefore, those cases, like *Allen* and *Dexter,* are simply beside the point. The issue here is not whether the remedy itself is precluded by the statute, but whether the agreement can support the remedy. Because the agreement was prohibited, and is accordingly void, we find that it cannot.

For the foregoing reasons, we conclude that the circuit court erred in requiring Mr. Dapp to pay Mrs. Dapp any amount based upon his past or future receipt of Tier I railroad retirement benefits. The judgment for $21,197.67 based on Tier I benefits paid to him prior to trial must be reversed, as

must the order requiring him to make payments in the future based on his receipt of such benefits.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTION TO VACATE THAT PORTION OF ITS ORDER ENTERING JUDGMENT FOR ONE–HALF OF TIER I BENEFITS AND REQUIRING PAYMENT OF FUTURE TIER I BENEFITS. COSTS TO BE PAID BY APPELLEE.**