483 A.2d 1

Earl Kenneth LOOKINGBILL

v.

Myra LOOKINGBILL.

No. 59, Sept. Term, 1983.

Court of Appeals of Maryland.

Oct. 31, 1984.

Michael George Raimondi, Baltimore (Murray L. Sherman and Allen L. Fox, P.A., Baltimore, on the brief), for appellant.

Michael S. Levin, Westminster (McIntire & Johnson, Westminster, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON *, RODOWSKY and COUCH, JJ.

SMITH, Judge.

The Circuit Court for Carroll County issued a decree divorcing *a vinculo matrimonii* Myra Lookingbill (Wife) from Earl Kenneth Lookingbill (Husband). While married to Wife, Husband became a permanent fireman in the Baltimore County regular fire department. Baltimore County Code (1978, 1982 Supp.) § 20–9(4).[1] By reason of his employment several types of retirement plans were available to him under certain circumstances. We are interested in two of them. The first is a service retirement plan provided by BCC § 20–19 in which age and length of service are the dominant factors (service plan). The second is an accidental injury retirement plan provided by BCC § 20–22 in which the dominant factor is a work-related injury, that is, an injury occurring during the actual performance of the employee's duties without wilful negligence on his part (disability plan). Under this plan a fireman may receive an allowance regardless of age or length of service.

Husband, during coverture, contributed to the retirement system for some years by deductions from his wages. As a result of a work-related injury he was retired on 1 June 1982 and was awarded an allowance under the disability plan. Several months later the absolute divorce was granted.

In the divorce decree the Chancellor granted a monetary award to Wife. Maryland Code (1984) § 8–205(a) of the Family Law Article.[2] In reaching the amount of the award,

---

\* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

1. Hereinafter the Baltimore County Code is cited as "BCC."

2. Hereinafter the Family Law Article of the Maryland Code is cited as "FL".

the Chancellor concluded that the pension received by Husband constituted marital property. FL § 8–201(e) and § 8–203. He determined its value. FL § 8–204. Husband was aggrieved both by the determination that the pension constituted marital property and by the value placed upon it. He noted an appeal, claiming that the Chancellor erred with respect to each of these holdings. On our own motion, before consideration of the appeal by the Court of Special Appeals, we ordered the issuance of a writ of certiorari.

At this point it is appropriate that we explain some of the terms used herein. For the purpose of this opinion "retirement plan" and "pension" are interchangeable. The rights under a pension may be referred to as "retirement benefits," "retirement allowance," "retirement pay," or "pension payments." Those terms are considered to be synonymous. In the context of a dispute over marital property arising in an action for divorce, a pension may be said to be "vested" or "matured." A vested pension is not the same as a matured pension. A pension is generally regarded as "vested" upon the attainment of a specified number of years of employment. A vested pension thus survives the discharge or voluntary termination of an employee. A pension is generally said to "mature" at the time benefits become presently payable. In other words, a pension does not mature until the employee is compelled or elects to retire and receives benefits. A "non-contributory" pension is one funded solely by an employer. A "contributory" pension requires payments by the employee, usually by payroll deductions. *Deering v. Deering,* 292 Md. 115, 118, n. 3, 437 A.2d 883 (1981). Finally, we are concerned here with civil, that is private or governmental pensions as distinguished

---

Provisions covering "Property Disposition in Annulment and Divorce" were formerly set out in Maryland Code (1974, 1984 Repl.Vol.) § 3–6A–01 through § 3–6A–08 of the Courts and Judicial Proceedings Article. The sections were repealed by Acts 1984, Ch. 296, § 1, effective 1 October 1984. The provisions, transferred to the Family Law Article as § 8–201 through § 8–213 were changed somewhat in style, but there were no substantive changes here pertinent.

from military retirement benefits. *E.g., Hill v. Hill,* 291 Md. 615, 620–621, 436 A.2d 67 (1981).

## Retirement Benefits as Marital Property

In *Deering* we addressed the scope of a spouse's rights in civilian retirement plans acquired by his or her marriage partner during the coverture period. 292 Md. at 117, 437 A.2d 883. We had before us two cases involving pensions. In one case the husband, as a result of his employment as a park police officer, possessed certain unmatured, fully vested pension rights based on obligatory contributions made by him during marriage. *Id.* at 118, 437 A.2d 883. In the other case, by reason of years of government service, the husband was entitled to a civil service pension upon retirement on reaching a certain age. This pension also had vested but had not matured and was funded in part by obligatory contributions made during marriage. *Id.* at 120, 437 A.2d 883. We decided that each of these pensions was marital property under the laws of this State. We held that

a spouse's pension rights, to the extent accumulated during the marriage, constitute a form of "marital property" .... *Id.* at 128, 437 A.2d 883.

In reaching the conclusion in *Deering* that the pensions constituted marital property, we looked to the Property Disposition in Annulment and Divorce Law (the Act). Under the Act " 'Marital property' means the property, however titled, acquired by 1 or both parties during the marriage." FL § 8–201(e)(1). A pension plan is not one of the properties expressly excluded from marital property. FL § 8–201(e)(2). In the grant of an absolute divorce, if there is a dispute as to whether certain property is marital property, the court shall determine which is marital property. FL § 8–203(a)(1). We recognized in *Deering* that the Act represents a new legislative approach to the concept of marriage. We called attention to the preamble to the Act in which the General Assembly declared " 'that marriage is a union between a man and a woman having equal rights under the law [and that] [b]oth spouses owe a duty to

contribute his or her best efforts to the marriage, and both, by entering into the marriage, undertake to benefit both spouses....'" *Deering*, 292 Md. at 122, 437 A.2d 883, citing 1978 Md.Laws, Ch. 794 and Report of Governor's Comm. on Domestic Relations Laws (1978). We thought it to be significant that over the past several years, "pension benefits have become an increasingly important part of an employee's compensation package which he or she brings to a marriage unit.... [T]he pension right ... may well represent the most valuable asset accumulated by either of the marriage partners." *Id.* at 122–123, 437 A.2d 883. We found that "those states, which, like Maryland, confer authority on courts considering divorce matters to make some form of distribution of joint and separate property upon termination of a marriage, with near unanimity, subject retirement benefits in general to division between the former spouses." *Id.* at 123, 437 A.2d 883. We set out a compendium of representative cases supporting this statement. *Id.* at 123–124, 437 A.2d 883. The cases essentially view pension benefits "as an economic resource acquired with the fruits of the wage earner spouse's labors which would otherwise have been utilized by the parties during the marriage to purchase other deferred income assets." *Id.* at 124, 437 A.2d 883. We declared that

> there is no reason to exclude one form of deferred income asset from the marital estate while including others. Both the nonemployed spouse and his or her wage earning marital partner have the same retirement goals and expectancies regarding the pension benefits as they would if they provided for their later years by using wage income to purchase other investments. *Id.* at 125, 437 A.2d 883.

We thought that it was "manifestly contrary to the language and purpose of [the Act] to strip the nonemployee spouse of the value of the retirement asset by precluding the [C]hancellor from evaluating its worth prior to adjudicating the property rights of the estranged marriage partners." *Id.* We found support for our view in the sweeping

language of FL § 8–201(e)(1) which defines, as we have seen, "marital property" as "the property, however titled, acquired by 1 or both parties during the marriage." We noted, quoting *Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914 (1965) that

> [t]he term property, "when considered in a broad sense, is a term of wide and rather comprehensive significiation. . . . It has been stated that the term embraces everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition." *Deering,* 292 Md. at 125, 437 A.2d 883.

Whether a pension is vested or unvested or matured or unmatured is immaterial to a determination of its status as marital property. " 'In the final·analysis, one must determine whether a property right has been acquired during the marriage and whether equity warrants its inclusion in the marital estate in light of its limitations.' " *Id.* at 127, 437 A.2d 883, quoting *Weir v. Weir,* 173 N.J.Super. 130, 413 A.2d 638, 640 (1980). It was in the light of our comprehensive discussion of the nature of pensions and the impact of the Act on them that we concluded that a spouse's pension rights, to the extent accumulated during the marriage, constitute a form of marital property subject to consideration by the Chancellor in making a monetary award. *See Ohm v. Ohm,* 49 Md.App. 392, 431 A.2d 1371 (1981).

■ The pension in dispute here became available to Husband during coverture by reason of his employment as a fireman. Like the pensions in *Deering,* it is a civil, contributory retirement plan to which contributions were made by Husband during the marriage by deductions from his wages. Unlike the *Deering* pensions, the pension here had matured during coverture—Husband was receiving a retirement allowance. We have seen, however, that neither the fact of vesting nor the fact of maturing is significant to a determination whether a pension is marital property. The major distinction between the *Deering* pensions and the pension here is that the *Deering* pensions were service

plans while Husband's pension is a disability plan. *Deering* did not speak directly to disability plans, but we believe that its rationale and authorities fully support the conclusion that a disability plan, in appropriate circumstances, may constitute marital property. We declared in *Deering* that the fact that a pension right may be contingent upon the happening of certain events does not degrade that right to an expectancy; the law has long recognized that a contingent future interest is property. We agreed with the statement of the court in *In re Marriage of Brown*, 15 Cal.3d 838, 848, 126 Cal.Rptr. 633, 639, 544 P.2d 561, 567 (1976) (en banc) that such contingencies should not be taken into account by the trial court when determining whether the retirement plan is properly includable in the marital estate. *Deering*, 292 Md. at 128, 437 A.2d 883. Therefore, despite Husband's importuning, the contingencies to which the payment of his allowance may be subject are not significant to a determination whether the pension is marital property. There are many types of retirement plans under which the rights the beneficiaries possess often differ, depending on a wide variety of factors. *Deering*, following the dominant trend of the law, rejected such distinctions in making the threshold determination of whether a retirement plan is marital property. 292 Md. 126–127, 437 A.2d 883. Consideration of any contingent nature of such rights is postponed until a valuation of the marital property is made. *Id.* Pension payments are actually partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability. Thus, a disability plan, like a service plan, is property and, within the meaning of the Act, constitutes marital property subject to equitable distribution. Inasmuch as the teachings of *Deering* with respect to service plans are equally applicable to disability plans, *Deering* is dispositive of the issue now considered. The allowance received by Husband under the disability plan consti-

tutes marital property. We hold that the Circuit Court for Carroll County did not err in so determining.[3]

### The Valuation of the Disability Allowance

█ It appeared to the trial court that a monetary award was in order as "an adjustment of the equities and rights of the parties concerning marital property...." FL § 8–205(a). In determining the amount of the award the court had to consider certain factors, including the value of all property interests of each party. FL § 8–205(a)(2). Since Husband's pension was a property interest, the court was obliged, as directed by FL § 8–204, to determine the value of the pension as marital property. The court accepted the valuation reached by an actuary who testified as an expert. The actuary's valuation, however, was with respect to the service plan, for at the time the expert testified, Husband had not retired and was not receiving an allowance under the disability plan. At a subsequent hearing pursuant to Maryland Rule S74 c., "Stale Testimony," it became known that, in fact, Husband had retired and was receiving payments under the disability plan so that the service plan was not available to him. This substantial change since the

---

3. Our conclusions that under *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981) Husband's retirement payments were marital property disposes of any suggestion that they should be treated as the equivalent of compensation under the Workmen's Compensation Act. It further precludes the notion that at least a part of the payments should be considered to be in satisfaction of Husband's pain and suffering resulting from his injury as is done under the laws of New York and California. *E.g. West v. West*, 475 N.Y.S.2d 493, 101 App. Div.2d 834 (1984); In re *Marriage of Samuels*, 96 Cal.App.3d 122, 158 Cal.Rptr. 38 (1979).

We note that Illinois and New Jersey under property distribution statutes similar to that of Maryland deem disability pension payments to be deferred compensation and treat them no differently than ordinary pension payments. *See In re Marriage of Smith*, 84 Ill. App.3d 446, 39 Ill.Dec. 905, 405 N.E.2d 884 (1980); *Kruger v. Kruger*, 73 N.J. 464, 375 A.2d 659 (1977). Courts in several states which recognize community property have also ruled to that effect. *See*, for example, *Hughes v. Hughes*, 96 N.M. 719, 634 P.2d 1271 (1981); *Guy v. Guy*, 98 Idaho 205, 560 P.2d 876 (1977); *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970).

conclusion of the prior testimony was noticed by the Chancellor but, in effect, brushed aside. He valued the allowance then being received by Husband under the disability plan at the same valuation which had been placed by the actuary on the unmatured service plan. The Chancellor said:

> Although [Husband] asserts that he no longer has his retirement pension available to him because he is now receiving a disability pension, the Court finds this argument to be without merit. A pension is nothing more than an expected future stream of income, whether that stream of income bears the label "retirement" or "disability." At age 53, [Husband] will have the benefit of a pension at least as good as the retirement pension which was evaluated by [the actuary]. Thus [Husband] does have a pension which [Wife] is entitled to have included in the computation of a monetary award.

The Chancellor made an adjustment with respect to the disability plan by allocating to Wife an amount equal to one-half the value the actuary had placed on the service plan.

As we have seen, the Chancellor was correct in determining that Husband had a pension which constituted marital property. He was wrong, however, in his valuation of it. The allowance under the service plan, BCC § 20–19, differs from the allowance under the disability plan, BCC § 20–23. Furthermore, Husband, as the beneficiary of a disability plan allowance, may be faced with periodic physical examinations and must submit a statement of earnings each year. The continuance of his allowance depends upon what the physical examination and statement of earnings from time to time disclose. BCC § 20–24. It is obvious that the value as marital property of the allowance Husband is receiving under the disability plan is not necessarily the same as the allowance he may have received under the service plan. We hold that the Circuit Court for Carroll County erred in its

valuation of Husband's pension. We vacate that part of its decree which granted the monetary award and entered a judgment thereon. We remand the case with direction to the court to revalue the allowance received by Husband under the disability plan and to use that revaluation as a factor in computing the amount of the monetary award.

In *Deering* we recognized that in valuing pension plans as marital property, "an elastic approach ... is required." 292 Md. at 129, 437 A.2d 883. We said that "when determining the proper allocation of retirement benefits between the parties, the trial court should evaluate various alternatives...." *Id.* at 130, 437 A.2d 883. For the guidance of the trial court here, we repeat those alternatives as set out in *Deering.*

"First, the trial court could consider the amount of [the husband's] contributions to the fund, plus interest, and award [the wife] an appropriate share.... Second, the trial court could attempt to calculate the present value of [the husband's] retirement benefits when they vest under the plan. Under this approach, the benefits payable in the future would have to be discounted for interest in the future, for mortality ... and for vesting.... The benefits would then have to be calculated with respect to [the husband's] life expectancy as a retiree. This calculation involves considerable uncertainty, and the amount yielded changes as different assumptions are used with respect to mortality, job turn-over, etc.... It has been recognized that this kind of calculation can be very difficult and that, where it becomes too speculative, the trial court should use a different method of valuation....

"Under either of the above two methods, the trial court would have the discretion to order the payment to [the wife] of her share in either a lump sum or in installments, depending primarily on the other assets and relative financial positions of the parties. The third method, which has been used widely ... is to determine a fixed

percentage for [the wife] of any future payments [the husband] receives under the plan, payable to her as, if, and when paid to [the husband].... Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is entitled." *Deering*, 292 Md. at 130–131, 437 A.2d 883, quoting *Bloomer v. Bloomer*, 84 Wis.2d 124, 267 N.W.2d 235, 241 (1978) (citations omitted).

It was our view that any of these approaches may represent the proper one for the trial courts of this State to take. But we cautioned that "whether any particular option represents an appropriate exercise of discretion depends, of necessity, upon the circumstances of the individual case." *Deering*, 292 Md. at 131, 437 A.2d 883. We pointed out, in this regard that FL § 8–205

does not require an equal division of marital property, nor does it contemplate a decretal award which is so harsh as to force a wage earner spouse to liquidate his or her pension interest in order to satisfy it. Moreover, we reiterate that the provision does not authorize a property award without the chancellor first giving due consideration to any alimony decreed. 292 Md. at 131, 437 A.2d 883.

Of course, in selecting an appropriate method of allocating retirement benefits between estranged spouses, it is important that the chancellor consider all relevant factors beginning with those expressly set out in FL § 8–205. *Id.*

DECREE AFFIRMED EXCEPT AS TO THAT PART THEREOF GRANTING A MONETARY AWARD WHICH IS VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID ONE-HALF BY APPELLANT AND ONE-HALF BY APPELLEE.