REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 497

September Term, 2014

_____

MARVIN WILSON

v.

SYLVIA WILSON

_____

Meredith,
Woodward,
Friedman,

JJ.

_____

Opinion by Woodward, J.

_____

Filed: July 1, 2015

In an Opinion, Judgment of Divorce, and Order of Court ("Judgment of Divorce") dated July 30, 2009, the Circuit Court for Prince George's County granted an absolute divorce to appellant, Marvin Wilson, from appellee, Sylvia Wilson. In the Judgment of Divorce, the court noted, among other things, that on July 21, 2009, the parties recited on the record an agreement on all property issues, which "included a division of the parties' pension interests." On August 6, 2009, the United States Air Force ("the Air Force"), appellant's employer, notified appellant that he would be placed on temporary disability retirement on October 28, 2009. On January 21, 2010, the court entered a Marital Property Consent Order reflecting the parties' July 2009 agreement, and ordering that each party shall receive fifty percent of the marital share of the other party's retirement and pension benefits.

Appellant was placed on permanent disability retirement on April 3, 2011. On July 23, 2013, the Air Force sent a letter to appellant's attorney, stating that it could not pay appellee her portion of appellant's retired pay, because the entire amount of such pay was based on appellant's disability, which by law cannot be paid to a former spouse. After a hearing on March 26, 2014, the trial court issued an order on April 30, 2014, finding that appellant had breached the parties' agreement, and ordering appellant to pay to appellee arrears in the amount of $63,543, representing appellee's portion of appellant's retirement benefits from May 2011 through March 2014.

On appeal, appellant presents four questions for our review, which we have rephrased

and condensed into two:[1]

> 1. Did the trial court err in determining that appellant breached the parties' property settlement agreement by failing to pay appellee her portion of appellant's military disability retirement benefits?
>
> 2. Did the trial court err or abuse its discretion in determining the amount of arrears arising out of appellant's breach of the parties' property settlement agreement?

We answer both questions in the negative and, accordingly, affirm the judgment of the circuit court.

## BACKGROUND

Appellant and appellee were married on February 11, 1989. Their son, Mitchell, was

---

[1] Appellant's questions, as presented in his brief, are as follows:

> 1. Did the trial court err as a matter of law by finding that Mr. Wilson had breached the parties' contract when in fact the contract had been void *ab initio*?
>
> 2. Did the trial court err by finding that there was nothing in the record to support Mr. Wilson's contention that the parties were aware of the disability benefits at the time they entered into their agreement?
>
> 3. Was the trial court's decision clearly erroneous in finding that Mr. Wilson had breached the parties' contract and made no efforts to perform?
>
> 4. Did the trial court abuse its discretion in contravening two prior trial court orders by requiring Mr. Wilson to pay one half (½) of his gross disability benefits?

2

born on July 28, 1997. The parties separated in October 2006. On August 25, 2008, appellee filed a complaint for absolute divorce in the circuit court. On February 19, 2009, appellant filed a counter-complaint for absolute divorce, custody, and other relief.

On June 1, 2009, the Air Force's Physical Evaluation Board ("the PEB") made its Findings and Recommended Disposition, in which it found that appellant's "medical condition prevents [him] from reasonably performing the duties of [his] office, grade, rank, or rating. Since the condition has not yet stabilized, the Informal Physical Evaluation Board finds [appellant] unfit and recommends temporary retirement with a disability rating of 60% . . . ."

On July 21, 2009, the trial court conducted a trial on alimony, child support, and attorneys' fees. On July 30, 2009, the court issued its Judgment of Divorce, in which it incorporated the agreements of the parties and resolved all remaining issues arising out of their marriage. The court noted in the Judgment of Divorce that, at the trial on July 21, 2009, the "parties recited on the record an agreement on all the property issues in this case. That agreement, among its terms, included a division of the parties' pension interests. A separate consent order will be submitted which includes those terms."

On August 6, 2009, the Air Force issued a Special Order to appellant, stating that "effective 27 Oct 09 you are relieved from active duty, above organization and station of assignment. Effective 28 Oct 29 you are placed on the temporary disability retired list [("the TDRL")] in the grade of Capt per AFI 36-3212 with compensable percentage for physical

3

disability at 060 percent." On November 16, 2009, the Defense Financing and Accounting Service ("DFAS") informed appellant via letter that his "retired pay" would be computed using his 60% disability rating, as applied to his active duty base pay at the time that he retired.

On January 21, 2010, the trial court issued a Marital Property Consent Order ("the Consent Order"), in which it noted that the parties had "reached an agreement regarding the division of marital property." The court ordered, among other things, "that [appellee] shall be awarded an interest in [appellant's] military pension fund, including the Survivor Benefit Plan. [Appellee's] share shall be fifty percent (50%) of the 'marital property portion' of [appellant's] monthly pension."

On December 29, 2010, appellee, at that time *pro se*, filed a Motion for Modification and/or for Contempt, alleging, among other matters, that appellant had not divided his military pension.

On January 28, 2011, the PEB issued a recommendation to remove appellant from the TDRL and place him on permanent disability retirement. The notice to appellant stated that he "may agree with the PEB recommendation, disagree and request a formal hearing of the case, or disagree and submit a written rebuttal in lieu of a formal hearing," and that appellant had until February 22, 2011 to make his decision, or else his agreement would be assumed. Appellant signed the form on February 22, 2011, concurring with the recommended findings. On March 14, 2011, the Air Force Physical Disability Division, Directorate of Personnel

4

Services wrote a letter to appellant, stating that Air Force officials had directed appellant's removal from the TDRL, placing him on permanent retirement with a compensable disability rating of 60%, effective April 3, 2011.

On June 30, 2011, the trial court held a hearing on appellee's motion for contempt. On July 6, 2011, the court issued an Opinion and Order of Court finding that appellant was not in contempt with regard to dividing his military pension, because

> [appellee's] right to a portion of [appellant's] retired pay (as opposed to disability) would not commence until May 1, 2011. While [appellee] is entitled to 50% of [appellant's] retired pay beginning May 1, 2011 her failure to receive that to date is due to the lack of appropriate pension order's being submitted it [sic] to the military in a timely fashion. It is hoped that she will secure the services of an attorney to prepare the appropriate order and submit it to DFAS as quickly as possible. **In any event, the Court herein will find that she [is] entitled to 50% of the retired pay portion of [appellant's] pension beginning May 1, 2011. For child support guideline calculations, based on the parties' testimony, the Court will assume that she will be receiving approximately $1,400.00 beginning and accounting from May 1, 2011.**

(Emphasis added).

On August 27, 2012, appellant filed a Motion to Enter Pension Orders (Request for Hearing). In his motion, appellant noted that "[d]espite repeated requests by [appellant] of [appellee] for approval of said Orders, no such approval has been forthcoming. As a result no Orders dividing said benefits have been signed by this Court." On May 23, 2013, after holding a hearing on appellant's motion, the court signed appellant's proposed Constituted Pension Order/Military Retired Pay Division Order ("the Constituted Pension Order") and

5

set a disposition hearing for September 12, 2013, to determine the amount of arrears that appellant owed to appellee. Thereafter, appellant submitted the Constituted Pension Order to DFAS.

Prior to the September hearing, on July 23, 2013, DFAS sent a letter to appellant's attorney stating that it had received appellant's "application for payment of a portion of the retired/retainer pay" to appellee, but that the "application cannot be approved for the following reason: The entire amount of [appellant's] retired/retainer pay is based on disability, thus there are no funds available for payment under the [Uniformed Services Former Spouses' Protection Act]."

On August 22, 2013, appellant filed a motion to postpone the September 12, 2013 hearing, because, among other things, appellant's counsel wanted to conduct discovery to determine how and why DFAS determined that all of appellant's retirement pay was based on his disability, and thus there were no funds available for payment directly to appellee. The court granted the motion, and after several further continuances, reset the disposition hearing for March 26, 2014.

On March 26, 2014, the trial court held a hearing to take evidence on the issue of the arrears owed to appellee and why DFAS had rejected the Constituted Pension Order. At the hearing, appellant filed his Trial Memorandum Regarding Military Pension Order, requesting that the court find that his retired military pay "is not divisible pursuant to the parties' Marital Property Consent Order." The court then afforded appellee, now represented by counsel, an

6

opportunity to write a memorandum for the court in response to appellant's memorandum. Appellee filed her Military Retirement/Pension Trial Memorandum on April 16, 2014, in which she requested that the court "[f]ind that she is entitled, under the parties['] agreement and the January 21, 2010 Marital Property Consent Order of this Court, to Fifty (50%) Percent of [appellant's] military retirement pay, regardless of what form it takes or is taking."

On April 30, 2014, the trial court issued a Memorandum and Order of Court, which states in relevant part:

> Having reviewed the previously issued Court Orders, the pleadings, the parties' trial memorandum, and the testimony, the Court finds that [appellee] should have received payments as follows:
>
> May 2011-November 2011      7 months x $3,546=$24,822
>
> December 2011-November 2012   12 months x $3,638=$43,656
>
> December 2012-March 201[4]     <u>16 months x $3,[663]$^2$=$58,608</u>
>                                       Total: $127,086 /2=$63,543
>
> ***
>
> **Based on the judgment of divorce, this Court finds that on July 21, 2009 the parties agreed to a division of the parties' pension interests. There is no evidence to suggest that at the time the parties entered into their agreement, [appellant] was barred by federal law from agreeing to split his pension benefits with [appellee].** While it is true that the Marital Property Consent Order was not entered until January 21, 2010, for all legal purposes it was

---

[2] The actual figure used by the trial court, $3,368, renders the mathematical equation incorrect. We inserted the figure of $3,663 because it accurately reflects appellant's monthly retirement payments from December 2012 to March 2014, and it also states a correct mathematical equation.

7

a binding contract at the time the parties entered into it on the record on July 21, 2009. In the parties' July 30, 2009 Judgment of Divorce (docket #35), the Court stated:

> "The matter was heard on July 21, 2009, the parties recited on the record an agreement on all the property issues in this case. The agreement, among its terms, included a division of the parties' pension interests. A separate consent order will be submitted which includes those terms."

In fact, [appellee] refused to sign the Consent Order (see docket #43). Notwithstanding her refusal, the Court entered the Order because it was placed on the record some six months before submission of the Consent Order.

This Court agrees with [appellee] that [appellant] incorrectly relies on *Dapp* [*v. Dapp*, 211 Md. App. 323 (2013)] (see footnote 1 of [appellee's] Trial Memorandum). **As of July 21, 2009, [appellant] agreed to assign 50% of the martial [sic] property portion of [appellant's] military pension to [appellee]. The date of the agreement to split the parties' pension interests was prior to both [appellant's] August 6, 2009 notification that effective October 28, 2009 he would be placed on the temporary retired list as well as [appellant's] March 14, 2011 notice of permanent retirement with a compensable disability rating of 60%. While [appellant] alleges that on June 1, 2009, the Findings and Recommended Disposition of USAF Physical Education Board found him 60% disabled with recommended temporary retirement, contrary to [appellant's] accretion [sic], there is nothing in the record to support his contention that either he or [appellee] knew about the disability recommendations on [the] July 21, 2009 contract date.**

The holdings in *Allen* [*v. Allen*, 178 Md. App. 145, *cert. denied*, 405 Md. 63 (2008)] and *Dexter* [*v. Dexter*, 105 Md. App. 678, *cert. denied*, 341 Md. 27 (1995)] make clear that where parties enter into an agreement or contract to transfer portions of their retirement pay, the Court will uphold the contract even if the retirement pay is a disability payment. **The Court will require the husband to pay sums from general assets based on receipt of the disability benefit,**

**in order to prevent the frustration of the parties' original agreement.** ***Dapp*** **is not controlling because at the time of the agreement, [appellant] was not prohibited by law from assigning the pension payment.** The agreement was not void at the time it was made and the anticipated military retirement benefits were divisible and assignable at the time of the agreement. Citing various contract provisions, the *Dexter* decision applied contract principles and stated, "each party has an obligation to take reasonable steps to bring the agreement to 'fruition'" (see Dexter v. Dexter 105 Md App 378) and, "the law will imply an obligation to act in good faith."

**Here, [appellant] has breached the parties' contract and has not taken any steps to fulfill his contractual obligations. In accepting [appellee's] retirement benefits, he agreed to transfer 50% of the marital portion of his military retirement payment to [appellee].** By concurring in the disability findings (see [appellant's] 2-22-11 concurrence), he was aware that he would forfeit his retirement pay. He exchanged one type of retirement pay for another. That does not relieve him of his contract to share 50% with [appellee]. The measure of past damages is the amount [appellee] would have received had [appellant] not breached his commitment.

Accordingly, it is, by the Circuit Court for Prince George's County, Maryland, this 30th day of April, 2014,

**ORDERED**, that [appellant] shall pay to [appellee] the sum of $63,543.00 as payment for [appellee's] pension interest from May 2011 through March 2014; and it is further,

**ORDERED**, that payment shall be made to [appellee] within Ninety (90) days from the entry of this order; and it is further,

**ORDERED**, that if payment is not made within Ninety (90) days then a judgment shall be entered against [appellant] in the amount of $63,543.00, and it is further,

**ORDERED**, that this case is hereby closed statistically.

(Emphasis added).

9

Appellant filed a timely notice of appeal to this court on May 14, 2014.

## STANDARD OF REVIEW

In *Allen*, we stated:

> We review the legal rulings of a trial court *de novo*. *Sweeney v. Savings First Mortgage, LLC*, 388 Md. 319, 326, 879 A.2d 1037 (2005). As to factual findings, the Court of Appeals has recently opined that,
>
> > [w]hen there is a conflict in the evidence, an appellate court will give great deference to a hearing judge's first-level factual and credibility determinations. *See, e.g.*, *[State v.] Nieves*, 383 Md. [573] at 581-582, 861 A.2d at 67 [(2004)], *Laney [v. State]*, 379 Md. [522] at 533-534, 842 A.2d at 779-780 [(2004)]. Findings of fact and credibility determinations are to be made by trial courts, not appellate courts. *See State v. Green*, 375 Md. 595, 607, 826 A.2d 486, 493 (2003).

178 Md. App. at 148 (alterations in original) (quoting *Longshore v. State*, 399 Md. 486, 520 (2007)).

## DISCUSSION

### I. Breach of Contract

#### A. Contract Interpretation

Appellant argues that the trial court was clearly erroneous in finding "that there was nothing in the record to support [appellant's] contention that the parties were aware of the disability benefits at the time they entered into their agreement." According to appellant, "[b]oth parties were aware at the time of the negotiation and entry of the Marital Property Consent Order that at least part of [appellant's] benefit would be disability." Appellant

10

contends that appellee never objected to appellant's expert witness's testimony that both parties were "probably" aware that some of appellant's pay was going to be non-divisible disability pay, "nor in any subsequent written pleading" or in her trial memorandum, "did [appellee] object to this characterization or present any testimony or evidence contradicting this testimony." Therefore, according to appellant, "[t]he record reflects that the parties knew that [appellant] was receiving disability from the Air Force, and that he was forced onto the [TDRL]. What the parties did not know was that no part of [appellant's] retired pay would ever be pension benefits."

Appellee responds that appellant never disclosed to her or to the trial court the June 1, 2009 PEB Findings and Recommended Disposition that appellant be placed on temporary disability, but rather "actively concealed his temporary disability status and its ramifications from the Court and the Appellee." Appellee also contends that the court's April 30, 2014 order was not clearly erroneous or an abuse of discretion, because the "Judgment of Divorce and Consent Order are both silent as to any exclusions with respect to the Appellee's share of the retirement benefits." According to appellee, the "mere fact that the disability retirement benefits are, in fact, the retirement benefits payable on account of the Appellant's marital service is sufficient to bring those benefits within the scope of the parties' Agreement." Appellee concludes that appellant "now wants a 'do-over' of the parties' Agreement so that he can keep all the retirement benefits for himself."

This Court explained the law governing a married couple's property settlement

agreement in *Fultz v. Shaffer*:

> "Marital property" is merely a term created to describe a status of property acquired during marriage, which, however titled, may give rise to potential inequity upon dissolution of marriage. It is this inequity that is corrected by way of a monetary award. Couples seeking to avoid the vagaries attendant upon such an award often enter into agreements whereby these property issues, as well as matters of alimony and child support, are resolved. The right to make these agreements, sometimes termed property settlement agreements, is without question. Indeed, [Family Law Article] § 8-105 provides the court with power to enforce the provisions of a settlement agreement; an agreement that has been incorporated, but not merged, into the final decree, may be enforced as a judgment or as an independent contract. In the latter instance, **a settlement agreement is subject to general contract law. Particular questions must be resolved by looking first to the particular language of the agreement at issue. If that language is clear as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed.** The court may not rewrite the terms of the contract or draw a new one when the terms of the disputed contract are clear and unambiguous, merely to avoid hardship or because one party has become dissatisfied with its provisions. If, however, a reasonably prudent person would consider the contract susceptible to more than one reasonable interpretation, it will be deemed ambiguous. In that case, the parties to a written contract will not be allowed to place their own interpretation on what it means or was intended to mean; the test is what a reasonable person in the position of the parties would have thought that it meant. A contract is not ambiguous merely because the parties thereto cannot agree as to its proper interpretation.

111 Md. App. 278, 297-99 (1996) (emphasis added) (citations omitted).

In *Fultz*, the husband was employed as a Montgomery County police officer during the majority of his marriage. *Id*. at 281. Upon the parties' divorce, they entered into a property settlement agreement, which stated that the wife was entitled to one-half of the

12

marital portion of the husband's "accrued pension benefits upon retirement." *Id*. at 282.

Two years later, the husband was placed on disability retirement after sustaining a service-connected disability, which led to litigation regarding the impact of the husband's disability retirement on the wife's share of the husband's pension benefits. *Id*. at 283-93. The circuit court determined that, under the terms of the property settlement agreement, the wife was entitled to one-half of the marital portion of the husband's disability pension. *Id*. at 296.

On appeal, this Court affirmed the trial court's ruling on the disability pension. *Id.* at 308. After summarizing the caselaw on the division of pension benefits upon divorce, we stated that "[t]he cases we have discussed indicate that disability benefits are in fact a type of retirement benefit subject to equitable distribution, whether the pensioner is disabled before or after the parties' divorce." *Id.* at 300-03. We continued:

> Because the parties to the instant matter agreed that [the husband's] retirement benefits constitute marital property that was to be divided upon receipt, the validity of [the wife's] claim to his disability benefits is pellucid. Moreover, by their agreement, the parties contractually fixed their rights and obligations attendant to the divorce, and [the husband] may not now challenge its terms merely because he is dissatisfied with its effects and/or his failure to define more precisely those benefits in which [the wife] would share. The parties placed their own definition upon the anticipated benefits, and they must abide by that definition. However the payments are characterized, the parties' Separation Agreement provided that [the wife] share in any and all allowances paid to [the husband] on account of his retirement. The trial court did not err in finding [the wife] was entitled to participate in the disbursement of those benefits. . . .
>
> ***
>
> **[W]e also cannot agree that the parties intended that [the wife]**

13

**would be completely disenfranchised in the event that [the husband's] retirement arose from anything other than a lengthy period of service.** Had that been the case, the parties would have included language in the Separation Agreement duly restricting [the wife's] right to benefits rendered solely on account of an extended period of service. Moreover, **the absence of language specifically excluding disability benefits from the phrase, "pension and retirement benefits," demonstrates that the parties intended any type of pension and retirement benefit to apply. The contractual language was all-inclusive. By its clear terms, it included any and all pension rights and retirement rights.** Therefore, although [the husband's] right to receive disability payments was contingent upon his retirement on disability, it was still a right that, at least partially, accrued during the marriage by virtue of [the husband's] employment in the first instance, and [the wife] was entitled to share therein.

*Id*. at 303-04 (emphasis added). In summary, we held that the term "retirement benefits" in a property settlement agreement includes disability benefits "unless they are expressly excluded." *Id*. at 307.

In the instant case, we follow the rules of contract interpretation by looking first to the terms of the parties' agreement to determine whether the parties intended that appellee would receive fifty percent of appellant's disability retirement benefits. The agreement was placed on the record at the hearing on July 21, 2009.[3] In its Judgment of Divorce, the trial court

---

[3] Unfortunately, the trial judge did not have the transcript of the July 21, 2009 hearing at the hearing on March 26, 2014. Appellee included such transcript and a blank copy of Air Force Form 1180 in the appendix to her brief in this Court. Appellant has filed a Motion to Strike the July 21, 2009 transcript, as well as the blank copy of the Air Force Form 1180, because they "were never presented to Judge John Paul Davey at the hearing on March 26, 2014, nor were they provided to him at any time prior to the Trial Court issuing the Memorandum and Order of Court." Appellee responds that pursuant to Md. Rule 8-501(e), she was "entitled to include other relevant portions of the record," because appellant had the
(continued...)

stated:

> The parties recited on the record an agreement on all the property issues in this case. **That agreement, among its terms, included a division of the parties' pension interests. A separate consent order will be submitted which includes those terms.**

(Emphasis added).

In its resolution of appellee's request for alimony, the court noted in the Judgment of

Divorce:

> **The only assets these parties have are their retirement assets. Their agreement equitably divides those assets. [Appellant] will be eligible to retire from the military in November of 2010. His testimony was that he will likely do so.** In light of his education and work experience, it is highly likely that once he retires he will be able

---

[3](...continued)
obligation to order relevant transcripts under Md. Rule 8-411(a). According to appellee, the July 21, 2009 transcript "was an appropriate part of the record, because it reinforces and states the conclusion of the lower court on April 30, 2014, and embodies the parties' agreement which the lower Court upheld." Appellee also claims that this Court is entitled to take judicial notice of the Air Force Form 1180. We agree with appellant that "Rule 8-414 does not provide for evidence created after a record is closed by the trial court to be considered" by this Court on appellate review. *Shih Ping Li v. Tzu Lee*, 210 Md. App. 73, 95 (2013), *aff'd*, 437 Md. 47 (2014). As the Court of Appeals has noted, "[o]nly in exceptional cases, when the requirements of logic are overcome by the demands of justice, is it proper to exercise the discretionary power of an appellate court in this State to look to a proceeding outside the record of the case before it." *Dashiell v. Meeks*, 396 Md. 149, 176-78 (2006) (noting that "[i]t is not the proper function of an appellate court to override [counsels'] tactical decisions and seek out additional evidence to supplement the record in order to support better arguments than those that were in fact raised and decided in the circuit court"). Here, appellee has not "state[d] that [her] case is exceptional, warranting a review of evidence outside the record" that was before the trial court on March 26, 2014. *Shih Ping Li*, 210 Md. App. at 95. As a result, we grant appellant's motion to strike, and do not rely on the July 21, 2009 transcript, nor on the Air Force Form 1180, in our disposition of this appeal.

to earn a very substantial income in addition to his retirement.

*\*\**

**The Court will award [appellee] rehabilitative alimony for two years . . . . Presumably before that two year period expires, it is likely she will be receiving her share of [appellant's] retirement**.

(Emphasis added).

In accordance with the trial court's directive in the Judgment of Divorce, the parties filed the Consent Order on January 21, 2010, which reflected the agreement of the parties "on all the property issues in this case" that was reached on July 21, 2009. The Consent Order states in relevant part:

> This matter having come before the Court on [appellant's] Counter-Complaint of Absolute Divorce **and the parties having reached an agreement regarding the division of marital property** and good cause having been shown, it is this 21st day of January, 2010 by the Circuit Court for Prince George's County, Maryland, hereby
>
> **ORDERED**, that [appellee's] share of [appellant's] Thrift Savings Plan (TSP) shall be an amount equal to fifty percent (50%) of [appellant's] interest in the TSP as of July 1, 2009, and adjusted for earnings, gains or losses thereafter until paid to her; and it is further
>
> **ORDERED**, that [appellant's] share of [appellee's] Thrift Savings Plan (TSP) shall be an amount equal to fifty percent (50%) of [appellee's] interest in the TSP as of July 1, 2009, and adjusted for earnings, gains or losses thereafter until paid to him; and it is further
>
> **ORDERED**, that **[appellee] shall be awarded an interest in [appellant's] military pension fund, including the Survivor Benefit Plan. [Appellee's] share shall be fifty percent (50%) of the "marital property portion" of [appellant's] monthly pension. The "marital property portion" of the monthly retire pay shall be a**

16

**fraction of the total monthly retired pay, and shall be defined as follows: the numerator shall be the total number of months of [appellant's] creditable service during the parties' marriage and the denominator of which shall be the total number of months of [appellant's] creditable service.** [Appellant] shall elect that [appellee] shall be entitled to the maximum possible Survivor Benefit Plan (SBP), the cost of which shall be deducted from the gross amount of the pension prior to distribution to the parties; and it is further

**ORDERED**, that [appellant] shall be awarded an interest in [appellant's] pension with the Federal Government (FERS). [Appellant's] share shall be an amount that shall be computed by multiplying the monthly self-only annuity of [appellee] by fifty percent (50%) and by multiplying the product thus derived by a fraction. The numerator of the fraction shall be the total months of the parties' marriage during which [appellee] accrued service under the FERS and the denominator of the marital fraction shall be the total months during which [appellee] accrued service under the FERS. [Appellant's] share shall be credited with cost of living or post-retirement or termination benefit increases granted to [appellee] at the same time and at the same percentage rate as granted to [appellee]. . . .

(Emphasis added).

The language used by both of the parties, as well as the trial court, refers broadly to appellant's "military pension fund." As stated above, under Maryland contract law, a provision dividing retirement benefits includes disability benefits "unless they are expressly excluded." *Fultz*, 111 Md. App. at 307. Because nothing in the Judgment of Divorce or the Consent Order excludes disability retirement benefits, or even references any disability on the part of appellant, we conclude that appellee's share of appellant's "military pension fund" includes his disability retirement benefits.

Our holding is supported by the fact that there is no evidence in the record to support

17

appellant's contention that, at the time of their negotiations on the pension interests, appellee was aware that appellant was recommended for temporary retirement based on disability. Although the PEB Findings and Recommended Disposition, which recommended "temporary retirement with a disability rating of 60%," is dated June 1, 2009, there is no evidence in the record that these findings were delivered to appellant before he received the Special Order on August 6, 2009, stating that "effective 27 Oct 09 you are relieved from active duty . . . . Effective 28 Oct 09 you are placed on the [TDRL] . . . with compensable percentage for physical disability at 060 percent." Even if appellant did receive the June 1, 2009 findings before the parties entered into their agreement on July 21, 2009, there is no evidence in the record that he sent or otherwise disclosed those findings to appellee or to the trial court. Indeed, in its Judgment of Divorce on July 30, 2009, the court determined that "[b]oth parties are in general good physical and mental condition," and expressly referred to the likelihood of appellee's receipt of her share of appellant's retirement benefits at the end of two years as a basis for awarding only two years of rehabilitative alimony.

Appellant urges us to rely on the testimony of his expert witness at the March 26, 2014 hearing to conclude that appellee was on notice of appellant's disability at the time of their negotiations leading up to the July 21, 2009 agreement. The expert witness, who had no personal knowledge of the parties' negotiations, testified as follows:

> What happened in this scenario is that [appellant]—at the time of the parties negotiating their separation [sic] agreement, [appellant] was on what we call the Temporary Disability Retirement List.

18

So at the time the parties negotiated this case, and I—I don't know how much testimony the Court has received, but in reviewing the documents, **I see that when the parties negotiated this case, [appellant] was already on TDRL. There was already a finding by the Secretary of the Air Force that he was 60 percent disabled. He was on his way out. So [appellee] and her counsel had notice[] that probably, most likely, there was not going to be a retirement that could be divided here.**

(Emphasis added).

The expert witness's testimony is clearly contradicted by the record. First, appellant was *not* on TDRL at the time of the parties' negotiations leading up to their July 21, 2009 agreement; appellant was not placed on TDRL until October 28, 2009, over three months after the parties put their agreement on the record on July 21, 2009. Second, there is simply no evidence in the record that appellee or the court ever received notice of appellant's disability status prior to the parties' agreement on July 21, 2009. Because no facts support the expert witness's testimony, that testimony cannot serve as an evidentiary basis for a finding that appellee was on notice of appellant's disability at the time that the agreement was entered into in July 2009.

Finally, although the August 6, 2009 Special Order, as well as the November 16, 2009 letter from DFAS informing appellant that his retired pay would be computed using his sixty percent disability rating, were both received by appellant prior to the entry of the Consent Order on January 21, 2010, there is no evidence in the record that these documents were disclosed to appellee or to the trial court. More importantly, the parties had already entered

19

into their agreement on July 21, 2009; the Consent Order merely reflected that agreement. Therefore, the trial court was eminently correct in finding that nothing in the record supports appellant's contention "that the parties were aware of the disability benefits at the time they entered into their agreement."[4]

Having upheld the trial court's ruling that the parties' division of appellant's military pension fund in their separation agreement included his disability retirement benefits, we turn next to whether appellant breached the parties' agreement. Appellant argues that the "trial court's decision was clearly erroneous in finding that [appellant] had breached the parties' contract and made no efforts to perform." According to appellant, he "actively pursued the entry and execution of a Constituted Pension Order," but he was "forced" onto the TDRL, which converted his retirement pay into non-divisible disability pay. Appellant contends that, at the time he entered into the Consent Order, he believed that some of his retirement pay would be divisible, which is why his counsel drafted and filed a motion to enter the Constituted Pension Order. Appellant disputes the trial court's finding that "[b]y concurring in the disability findings . . . , he was aware that he would forfeit his retirement pay," because

---

[4] At oral argument before this Court, appellant's counsel pointed to a list of appellant's medical appointments from June 2008 through November 2010, which was included as an exhibit at the March 26, 2014 hearing, as evidence that appellee was on notice of appellant's medical condition prior to the execution of their agreement on July 21, 2009. This list, dated December 17, 2010, was not generated until well after July 21, 2009. Moreover, because all of these appointments occurred *after* the parties separated in October 2006, there is no reason to conclude that appellee was aware of appellant's medical appointments or his condition after the date of their separation.

the form that appellant filled out "does not give the service member a right to dispute receiving disability or 'forfeit' retired pay." Appellee responds that appellant breached the agreement when he accepted the Air Force's findings and signed the concurrence to his permanent retirement on the basis of disability in February of 2011.

The trial court was correct in stating that appellant "has not taken any steps to fulfill his contractual obligations," because appellant has not paid appellee her portion of appellant's military retirement benefits. The fact that appellant did not voluntarily choose to be placed on disability retirement does not alter or excuse his obligations under the settlement agreement that he entered into before his change in classification. Furthermore, the Consent Order does not require DFAS to pay appellee directly; as a result, DFAS's refusal to honor the parties' Constituted Pension Order does not excuse appellant from his contractual obligation to give appellee her portion of his retirement benefits.

The PEB's determination that appellant would be permanently retired due to his disability frustrated performance of the parties' agreement. On the form signed by appellant on February 22, 2011, he checked the box stating that he concurred with the recommended findings. Appellant's other two options were to "not concur with the recommended findings and request appearance before the formal PEB," or "not concur with the recommended findings, waive a formal hearing, and submit a written rebuttal." If appellant was not successful in such challenge, or forfeited his opportunity to challenge the determination, as appellant did here, then the parties' agreement still required him to fulfill his contractual

21

obligation to ensure that appellee received the retirement benefits that she bargained for, and that appellant agreed to provide. Accordingly, the trial court did not err in finding that appellant breached the parties' agreement.[5]

## B. Federal Preemption

Appellant contends that the trial court erred by finding that he breached the parties' contract regarding the division of their retirement benefits, because the contract was void *ab initio*. Specifically, appellant argues that this case is distinguishable from *Allen* and *Dexter*, because in those cases, the service members received their disability retirement benefits *after* the entry of an agreement dividing their military retirement benefits. In this case, on the other hand, appellant contends that, because he had already been placed on the TDRL at the time of the divorce trial on July 21, 2009, the parties knew or should have known that a portion of appellant's retirement pay would include non-divisible disability pay, but only agreed to divide the non-disability portion of appellant's retirement benefits. Appellant asserts that this case is similar to *Dapp*, where "this Court found that the parties' contract

[5] Appellant points to the trial court's Constituted Pension Order, which required DFAS to pay appellee directly her portion of appellant's retirement benefits, and argues that the trial court erred in disregarding the Constituted Pension Order in its April 30, 2014 order. The trial court, however, "may not rewrite the terms" of a property settlement agreement; it can only enforce those terms. *Fultz v. Shaffer*, 111 Md. App. 278, 298 (1996). Here, the parties' Consent Order did not specify that DFAS would pay appellee's portion of appellant's retirement benefits to her directly; it was silent as to the mechanism of such payment. We conclude that the purpose of the court's Constituted Pension Order was to enforce the parties' agreement as memorialized in their Consent Order. When the mechanism contemplated by the Constituted Pension Order was not possible, the court entered the April 30, 2014 order to provide another way to implement the parties' agreement.

22

dividing certain retirement benefits was void because the benefits were not divisible at the time that the parties entered into their agreement." According to appellant, the language in the Constituted Pension Order that appellee "shall receive as her sole and separate property, a percentage of [appellant's] disposable retired pay as, if and when it is paid," will never occur, because appellant "has never received, nor will he ever receive" any disposable retired pay.

Appellee responds that *Dexter* and *Allen* control the outcome of this case, and that "Maryland Courts have consistently held that the *Bangs*[6] formula applies to different and new benefits that come into existence after the parties' divorce with respect to retirement rights that were divided by the parties, even where those benefits were not addressed or contemplated by the parties at the time of the divorce."

Before we address relevant Maryland case law, it is useful to provide a brief background on federal law regarding the division of a service member's military retirement benefits, including disability retirement benefits. The Uniformed Services Former Spouses' Protection Act ("USFSPA") governs the division of military retirement benefits upon a couple's divorce:

> **(c) Authority for court to treat retired pay as property of the member and spouse.**—(1) Subject to the limitations of this section, **a court may treat disposable retired pay payable to a member** for pay periods beginning after June 25, 1981, **either as property solely of the member or as property of the member and his spouse in**

---

[6] *See Bangs v. Bangs*, 59 Md. App. 350 (1984).

**accordance with the law of the jurisdiction of such court**. A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.

10 U.S.C. § 1408(c)(1) (2012) (emphasis added). "Disposable retired pay," which is subject to division by state courts, is defined as "the total monthly retired pay to which a member is entitled," *excluding* certain amounts, such as an individual's veteran's disability benefits, or, as relevant to this case, one's pay based on retirement or separation due to physical disability. *Id*. §§ 1408(a)(4)(B)-(C).

The United States Supreme Court examined the exclusion of veteran's disability benefits from the service member's disposable retired pay in *Mansell v. Mansell*:

> The amount of retirement pay a veteran is eligible to receive is calculated according to the number of years served and the rank achieved. Veterans who became disabled as a result of military service are eligible for disability benefits. The amount of disability benefits a veteran is eligible to receive is calculated according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired.
>
> In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. Because disability benefits are exempt from federal, state, and local taxation, military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common.

24

490 U.S. 581, 583-84 (1989) (citations omitted).

In *Mansell*, the Supreme Court interpreted USFSPA to mean that state courts do not have the authority to treat "total" military retirement pay as marital property subject to division upon divorce; rather, they are limited to dividing "disposable retired pay" only. *Id.* at 589. As a result, the Court held that state courts do not have the power to treat as marital property "military retirement pay that has been waived to receive veterans' disability benefits." *Id*. at 594-95; *see also Lebac v. Lebac*, 109 Md. App. 396, 409 n.16 (1996) ("We are cognizant that several federal disability retirement plans specifically disallow distribution of disability retirement benefits. *See e.g.* 10 U.S.C. § 1408 et. seq. (excluding veterans' disability retirement benefits from equitable distribution under state law).")

Benefits based on retirement or separation due to physical disability, unlike veterans' disability benefits, are based on the number of years of service. Like veterans disability benefits, however, these benefits are not subject to division by a state court. 10 U.S.C. §§ 1408(a)(4)(B)-(C). If a service member has "20 or more years of active service, retirement will be recommended regardless of [the service member's] disability rating." Qualifying for a Disability Retirement, Defense Finance and Accounting Service http://www.dfas.mil/retiredmilitary/disability/disability.html (last updated Feb. 9, 2012). If, on the other hand, the service member has "less than 20 years of active service a disability rating of 30 percent or higher will qualify [him] for retirement, and a disability rating below 30 percent will result in separation." *Id*. If the service member's "disability existed before

25

[he] entered the armed forces [he] will be recommended for discharge without benefits." *Id.*

This Court has considered the division of military retirement benefits based on disability in two cases: *Dexter* and *Allen*. In *Dexter*, the husband and wife entered into a settlement agreement, which was incorporated into their divorce decree. 105 Md. App. at 679. The parties agreed that the wife would receive 47.5% of the husband's military pension on an if, as, and when basis. *Id.* Shortly after the husband retired, "he voluntarily waived his rights to the Army retirement benefits, thus terminating and cutting off all of his Army retirement benefits and appellee's as well," to qualify for greater veterans' disability benefits. *Id.* at 680; *see also* 10 U.S.C. § 1408(a)(4)(B). In an action brought by the wife, the trial court found that the husband had breached the parties' separation agreement. *Dexter*, 105 Md. App. at 682-84. The trial court "rendered judgment for past sums that would have been received had [the husband] not unilaterally violated the terms of the agreement by waiving and rejecting the retirement benefits after they had accrued and vested and were being received by both parties." *Id.* at 684.

This Court affirmed the trial court's ruling, holding that

> under Maryland contract law where, as in the case *sub judice*, the parties enter into an agreement that one spouse will receive a percentage of pension benefits, on a periodic basis, when they become payable, and when, as here, they are already payable and being paid, the pensioned party may not hinder the ability of the party's spouse to receive the payments she has bargained for, by voluntarily rejecting, waiving, or terminating the pension benefits. We hold that the voluntary waiver of [the husband's] Army retirement pension was under Maryland law a breach of contract, for which the measure of past damages is the amount the receiving spouse would have received

26

had [the husband] not committed the breach. . . .

*Id*. at 686.

We noted that, because our holding was based on Maryland contract law, we had no need to address whether the trial court's holding was preempted by federal law under *Mansell*. *Id*. at 686 and n.4 (noting that the trial court "did not engage in 'distributing any military benefits,' *i.e.*, disability benefits").

We returned to the same issue in *Allen*. In that case, the husband and wife agreed that the wife would "be named as the alternative payee of the pension/retirement plans of [the husband]," who worked for the Army. 178 Md. App. at 146, 147. More than eight years after the parties' divorce, the husband was placed on the TDRL. *Id*. at 147. After two years on the TDRL, the husband "was discharged from the military because of a permanent physical disability," and received a lump sum payment in disability severance. *Id*. After DFAS sent the wife correspondence that she was not entitled to any portion of the husband's retirement funds under the USFSPA "because the entire amount was based upon [the husband's] disability," the wife filed a Motion for Determination of Arrearages and for Judgment against the husband, which the trial court granted. *Id*. at 148.

We affirmed the trial court's judgment. First, we noted that under Maryland law, "pension payments 'are actually partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability.'" *Id*. at 151 (quoting *Lookingbill v. Lookingbill*, 301 Md. 283, 289 (1984)). Next, we emphasized that

27

"the parties agreed to reciprocal rights with respect to pension and retirement benefits."

*Allen*, 178 Md. App. at 153. We recognized that, although federal law precludes state courts from treating disability retirement benefits as marital property,

> [t]he circuit court's ruling on appeal does not require payment to [the wife] of any disability benefits, thus, the court, in essence, is not treating as property divisible, payment that has been waived to receive disability benefits. When [the husband] was discharged from the military, he received in entirety the benefits the United States owed to him for his service. These assets have become part of [the husband's] general assets. Accordingly, [the husband] can satisfy the judgment against him with any assets, thereby not violating *Mansell*. We, therefore, affirm the circuit court's determination of arrearages to be satisfied by appellant out of his general assets.

*Allen*, 178 Md. App. at 153-54.

In *Allen*, we compared the parties' situation with that in *Dexter*, noting that "in both cases, the parties did not require the retirement benefits to be paid by the military, but simply required that the wife and [husband] receive the stipulated share." *Allen*, 178 Md. App. at 155 (citing *Dexter*, 105 Md. App. at 684). We observed that in *Allen*, the husband's disability classification,

> **although not a voluntary act of waiving military retirement benefits, terminated pension benefits thereby frustrating the performance of the parties' contract.** For this Court to accept [the husband's] argument would permit [the husband] to exclude [the wife] from receiving her share of the benefits that [the husband] accrued as a result of his twenty marital years of service. The Judgment of Divorce contemplated that [the wife] would share in all retirement benefits accrued as a result of [the husband's] military service evidenced by the use of the phrase "pension/retirement plans." **Moreover, because [the husband's] disability retirement benefits are paid as pension and retirement benefits and take the place of**

28

**other pension and retirement benefits, they are subject to the division of "pension/retirement plans."  To deny [the wife] any share of retirement benefits because [the husband] received severance disability retirement benefits is contrary to the intent of the parties.**

*Allen*, 178 Md. App. at 155-56 (emphasis added).

In the case *sub judice*, appellant attempts to distinguish *Allen* and *Dexter* on the grounds that in those cases, the service member either became disabled or waived his retirement benefits in favor of veterans' disability benefits *after* the parties divorced, while here, appellant was placed on TDRL *before* the parties were divorced.  As we have already stated, however, appellant was not notified that he would be placed on the TDRL until August 6, 2009, *after* the parties had entered into their property settlement agreement on July 21, 2009.

As was the case in *Allen*, the parties in the instant case agreed that appellee would receive a fifty percent share of the marital portion of appellant's military retirement benefits, and that those benefits were not required to be paid by the military.  178 Md. App. at 146.  In both cases, after the parties' divorce and property settlement agreement were finalized, the service member, through no voluntary action on his own, was initially placed on the TDRL, and eventually was discharged from the military or placed on permanent disability retirement.  *Id*. at 147.  In both cases, DFAS refused to enforce a court order directing it to pay a portion of the service member's retirement to his former spouse, because the service member was receiving non-divisible disability benefits only, and such refusal contravened the parties'

29

intent and frustrated the performance of the parties' agreement. *Id*. at 148, 155-56. In both cases, the husband's military disability retirement benefits, which were based on the husband's marital years of service, replaced the retirement benefits that the service member would otherwise have received. *Id*. at 155. Finally, appellant, like the service member in *Allen*, has already received the pension benefits from DFAS for the period of May 2011 through March 2014, which have become part of his general assets, and thus he "can satisfy the judgment against him with any assets, thereby not violating *Mansell*." *Allen*, 178 Md. App. at 153-54. Therefore, we conclude that the holding of *Allen* controls this case, and accordingly, the trial court did not err in ordering appellant to pay appellee her share of his retirement benefits that were in arrears for the period of May 2011 through March 2014.

Appellant's reliance on *Dapp* is misplaced. In *Dapp*, the parties' property settlement agreement stated that "the Wife shall be entitled to one-half (½) of all pension accrued by the Husband with Amtrak if she does not remarry within five (5) years from the date of final divorce." 211 Md. App. at 325. The husband's retirement benefits were governed by the Railroad Retirement Act, which stated that Tier II benefits were divisible, while Tier I benefits were not. *Id*. at 328, 330.

When the wife learned that the husband had retired, she filed a complaint to enforce the separation agreement, "seeking one-half of the entirety of [the husband's] railroad retirement benefits." *Id.* at 326. The husband responded that the wife was entitled to one-half of the marital portion of his Tier II benefits only. *Id*. The trial court concluded that the

parties intended to divide the entirety of the husband's retirement benefits. *Id*. at 327. To effectuate the parties' agreement, the trial court ordered the husband to pay the wife one-half of the Tier I and Tier II benefits that he had already received, as well as an ongoing monthly payment equal to one-half of the Tier I benefits he would receive each month in the future. *Id*. at 327-28.

On appeal, we reversed the trial court's ruling. We noted that, even though *Dapp* involved a private agreement between the parties to divide all of the husband's retirement benefits, "the agreement made by [the husband] was void when it was made because the unambiguous terms of [the Railroad Retirement Act] prohibit 'assignment' of the benefits." *Id*. at 330-31. We held that, "[b]ecause [the husband] could not legally make such an agreement, his promise was simply ineffective. Therefore, the agreement is not subject to enforcement in any manner, whether by an order directly affecting the benefits or otherwise." *Id*. at 331.

We distinguished *Dapp* from *Allen* and *Dexter*:

> Those cases do not provide authority to sustain the trial court's action here. **Unlike the agreement that is the subject of this case, the agreements enforced in *Allen* and *Dexter* were valid when they were made; the anticipated military retirement benefits were divisible and assignable at the time of contract. The Tier I benefits at issue here, however, were not.** Because [the husband] was barred by the anti-assignment clause from anticipating or assigning his future Tier I benefits, he has no pre-existing obligation to make payments based upon the amount he now receives, and there is no valid agreement for the circuit court to enforce. The fact that the order does not directly affect his benefits is irrelevant.

31

*Id*. at 333-34 (emphasis added) (citing *Allen*, 178 Md. App. at 145; *Dexter*, 105 Md. App. at 678).

As previously stated, appellant was notified that he would be placed on the TDRL, as well as on permanent retirement due to his disability, *after* the parties entered into their agreement on July 21, 2009. Indeed, the record is clear that, although appellant received notice on March 14, 2011, that he would be placed on permanent disability retirement as of April 3, 2011, he actually believed that he would receive divisible military retirement pay.[7]

In summary, because appellant's "anticipated military benefits were divisible and assignable at the time of contract," *Allen*, rather than *Dapp*, controls. *Dapp*, 211 Md. App. at 333-34; *Allen*, 178 Md. App. at 155-56. Accordingly, the parties' property settlement

---

[7] On June 30, 2011, the trial court held a hearing on appellee's motion for contempt. At that hearing, appellant represented to the court that his retirement pay would not commence until May 1, 2011, *and that as of that date, he was receiving a monthly retirement benefit of $2,836 per month of divisible retirement pay and $709 per month of non-divisible disability pay*. In the court's July 6, 2011 order, which appellant never appealed, the court computed both parties' child support obligations based on appellant receiving $1,418 per month from the divisible retirement pay *and appellee receiving the same amount—$1,418*. As a result, appellant has benefitted from a decreased child support obligation since July 2011, in addition to enjoying the full amount of his retirement benefits that are payable on account of his marital service. We will not permit appellant to enjoy such a windfall after each party bargained for a fifty percent share of the marital portion of the other's retirement benefits. *See Allen v. Allen*, 178 Md. App. 145, 155, *cert. denied*, 405 Md. 63 (2008) ("A pensioned party may not hinder the ability of the party's spouse to receive the payment that she has bargained for . . . ."); *see also Fultz*, 111 Md. App. at 303-304 ("[W]e also cannot agree that the parties intended that [the wife] would be completely disenfranchised in the event that [the husband's] retirement arose from anything other than a lengthy period of service. Had that been the case, the parties would have included language in the Separation Agreement duly restricting [the wife's] right to benefits rendered solely on account of an extended period of service.").

agreement was valid at the time it was executed, and the trial court had the authority to enforce the parties' agreement.[8]

## II. Damages

Finally, appellant argues that the trial court erred by calculating his arrears based on his 2013 Retiree Account Statement, "without regard to the . . . taxes, or the survivor benefits paid by [appellant]." We agree with appellee that this issue is not preserved for our review, because appellant did not present any argument regarding taxes or survivor benefits upon which the trial court could base its calculation of arrears, nor did appellant file a motion to alter or amend the trial court's April 30, 2014 order. We also note that it was appellant who submitted his 2013 Retirement Account Statement to the court in the first place, along with his 2011 and 2012 pay history, none of which provided a calculation of any alleged taxes paid by appellant on behalf of appellee. Accordingly, we decline to decide an issue not raised in or decided by the trial court. *See* Md. Rule 8-131(a).

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**

---

[8] We note that, "[a]s the trial judge did not award appellee any future portions of appellant's [military] pension, we do not further address the alleged federal p[re]emption in this area of interspousal conflict." *Dexter v. Dexter*, 105 Md. App. 678, 686 (footnote omitted), *cert. denied*, 341 Md. 27 (1995).